1

**BEALL & BURKHARDT, APC**
WILLIAM C. BEALL, STATE BAR NO. 97100
ERIC W. BURKHARDT, STATE BAR NO. 132812
CARISSA N. HOROWITZ, STATE BAR NO. 274814
1114 STATE STREET
LA ARCADA BUILDING, SUITE 200
SANTA BARBARA, CALIFORNIA, 93101
(805) 966-6774, FAX (805) 963-5988

2

3

4

5

Attorneys for Debtor-in-Possession

6

7

8

## UNITED STATES BANKRUPTCY COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

### NORTHERN DIVISION

11

12

In re

13

Valley Farm Supply, Inc.,

14

               Debtor.

15

16

17

18

| | |
|---|---|
| ) | Bankruptcy No. 9:20-bk-11072-DS |
| ) | Chapter 11 |
| ) | |
| ) | **OBJECTION TO CLAIM 19** |
| ) | |
| ) | Date:  April 28, 2021 |
| | Time:  11:30 a.m. |
| | Place: 1415 State Street |
| |         Courtroom 201 |
| |         Santa Barbara, CA 93101 |
| |         And via zoom.gov |

19

20

TO THE HONORABLE DEBORAH SALTZMAN, UNITED STATES BANKRUPTCY

21

JUDGE:

22

Debtor-in-Possession, Valley Farm Supply, Inc., objects to the following claim on the following

23

grounds:

24

    1.        <u>Claim No. 19 of J.R. Simplot Company / Simplot AB Retail. Inc.</u>

25

J.R. Simplot Company/Simplot AB Retail, Inc. has filed claim No. 19 in the amount of $172,477.82.

26

A copy of the claim is attached as Exhibit A.

27

    The claim asserts that it is fully secured.  The assets available for Claimant are far less than the

28

asserted amount of the claim, and the Claim is partially, or wholly, unsecured.

1        In addition, the calculation of finance charges appears to be inaccurate, and there is no support for

2  the initial amount of the claim.

3        WHEREFORE, claim 19 should only be allowed in the amount of proven amount, after analysis

4  of the Court of the value of Claimant's collateral.

Respectfully Submitted,

Dated: 3/15/21

BEALL & BURKHARDT, APC

By: _William C. Beall_

William C. Beall, Attorneys for Valley Farm Supply, Inc.

Case 9:20-bk-11072-DS    Claim 19    Filed 12/17/20    Desc Main Document    Page 1 of 3

---

| Fill in this information to identify the case: |
|---|
| Debtor 1    Valley Farm Supply, Inc. |
| Debtor 2 (Spouse, if filing) |
| United States Bankruptcy Court for the:  Central District of California |
| Case number   9:20-bk-11072-DS |

## Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:   Identify the Claim

| | |
|---|---|
| 1.  Who is the current creditor? | **J.R. Simplot Company / Simplot AB Retail, Inc.**<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor |
| 2.  Has this claim been acquired from someone else? | ☒ No<br>☐ Yes.  From whom? |
| 3.  Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Where should notices to the creditor be sent?<br><br>**Hagop Bedoyan / McCormick Barstow LLP**<br>Name<br>**7647 N. Fresno St.**<br>Number        Street<br>**Fresno**          **CA**          **96720**<br>City                State            ZIP Code<br><br>Contact phone  **559-433-1300**<br><br>Contact email  hagop.bedoyan@mccormickbarstow.com<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br>— — — — — — — — — — — — — — — — — — — — — — — — | Where should payments to the creditor be sent? (if different)<br><br>Name<br><br>Number        Street<br><br>City                State            ZIP Code<br><br>Contact phone<br><br>Contact email |
| 4.  Does this claim amend one already filed? | ☒ No<br>☐ Yes.  Claim number on court claims registry (if known) _____    Filed on ____ / ____ / _____<br> MM  /  DD  /  YYYY |
| 5.  Do you know if anyone else has filed a proof of claim for this claim? | ☒ No<br>☐ Yes.  Who made the earlier filing? |

---

Official Form 410                              Proof of Claim                                          page 1

Exhibit A - Page 3

Case 9:20-bk-11072-DS    Claim 19    Filed 12/17/20    Desc Main Document    Page 2 of 3

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____  ____  ____  ____

**7. How much is the claim?**

$ _____4,637,099.30_____ . Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Settlement Agreement regarding breach of contract

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☑ Other. Describe:    All inventory and personal property

Basis for perfection:    Security Agreement and UCC-1

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                                    $   Unknown

Amount of the claim that is secured:         $   Unknown

Amount of the claim that is unsecured:  $   Unknown        (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:        $_____0.00_____

Annual Interest Rate (when case was filed) __7.00__ %

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.        $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

Exhibit A - Page 4

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

|  | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:   Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   12/14/2020
                   MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| Name | Hagop | T. | Bedoyan |
|---|---|---|---|
|  | First name | Middle name | Last name |

Title   Attorney

Company   McCormick Barstow Sheppard Wayte Carruth LLP
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address   7647 N. Fresno St.
          Number   Street

Fresno                                          CA          93720
City                                            State       ZIP Code

Contact phone   559-433-1300          Email   hagop.bedoyan@mccormickbarstow.com

Exhibit A - Page 5

**Fill in this information to identify the case:**

Debtor 1    Valley Farm Supply, Inc.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:    Central District of California

Case number    9:20-bk-11072-DS

---

## Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

---

### Part 1:    Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | J.R. Simplot Company / Simplot AB Retail, Inc. |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |
| 2. Has this claim been acquired from someone else? | ☑ No ☐ Yes. From whom? |

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Hagop Bedoyan / McCormick Barstow LLP
Name

7647 N. Fresno St.
Number        Street

Fresno                CA            96720
City              State            ZIP Code

Contact phone  559-433-1300

Contact email  hagop.bedoyan@mccormickbarstow.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

Where should payments to the creditor be sent? (if different)

Name

Number        Street

City              State            ZIP Code

Contact phone

Contact email

| | |
|---|---|
| 4. Does this claim amend one already filed? | ☑ No ☐ Yes.  Claim number on court claims registry (if known) _____    Filed on ____ / ____ / _____  MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No ☐ Yes.  Who made the earlier filing? _____ |

---

Official Form 410                    Proof of Claim                    page 1

Exhibit A - Page 6

**Part 2:**  Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  ____  ____  ____  ____

**7. How much is the claim?**   $_____4,637,099.30_. **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Settlement Agreement regarding breach of contract

**9. Is all or part of the claim secured?**

☐ No

☑ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☑ Other. Describe:    All inventory and personal property

**Basis for perfection:**    Security Agreement and UCC-1

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $  Unknown

**Amount of the claim that is secured:**   $  Unknown

**Amount of the claim that is unsecured:**  $  Unknown    (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $_____0.00

**Annual Interest Rate** (when case was filed) _7.00_ %

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.    $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

Official Form 410                                    Proof of Claim                                    page 2

Exhibit A - Page 7

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | |
|---|---|---|
| | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  12/14/2020
                  MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| Name | Hagop | T. | Bedoyan |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | McCormick Barstow Sheppard Wayte Carruth LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 7647 N. Fresno St. | | |
| | Number        Street | | |
| | Fresno | CA | 93720 |
| | City | State        ZIP Code | |
| Contact phone | 559-433-1300 | Email | hagop.bedoyan@mccormickbarstow.com |

STATEMENT ITEMIZING INTEREST, FEES, EXPENSES,
OR OTHER CHARGESBANKRUPTCY RULE 3001(c)(2)(A)

| Starting Balance | $ 5,014,605.95 |
|---|---|
| Interest Rate | 7% |
| Default Rate | 18.00% |

| Date | Payment | Accrued Interest | Principal Balance | Total |
|---|---|---|---|---|
| 1/1/2019 | | | $ 5,014,605.95 | $ 5,014,605.95 |
| 2/19/2020 | $ 595,000.00 | $ 398,145.97 | $ 4,419,605.95 | $ 4,817,751.92 |
| 4/2/2020 | $ 170,000.00 | $ 434,592.59 | $ 4,249,605.95 | $ 4,684,198.54 |
| 7/9/2020 | $ 170,000.00 | $ 514,461.89 | $ 4,079,605.95 | $ 4,594,067.84 |
| 9/2/2020 | | $ 557,493.35 | $ 4,079,605.95 | $ 4,637,099.30 |
| | | | | |

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement (the "Agreement") is entered into as of the date of the last signature affixed below (the "Effective Date") by and between the following parties: J. R. Simplot Company dba Simplot Grower Solutions ("JRS"); Simplot AB Retail, Inc. ("SABR") (collectively, "Simplot"); Valley Farm Supply, Inc., a California corporation ("VFS"), Peter J. Compton ("Peter") individually and in his capacity as a former Co-Trustee of the Compton Family Trust, and ██████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████ Peter and VFS may be referred to collectively hereinafter as the "VFS Defendants." Peter, VFS, ██████████████████████████████████████████████ ████████████ Simplot, VFS, Peter, ██████████ may be referred to collectively hereinafter as the "Parties" or in the singular as a "Party."

## RECITALS

A.    A dispute arose between the Parties concerning an indebtedness (the "Debt") alleged by Simplot to be owed by VFS to Simplot as a result of, without limitation, JRS's provision of goods on credit to VFS. Simplot during the course of this dispute contended that the Debt was guaranteed by Peter and ██████████████████████████████████████████████ ████████████████████████████████████████████ Defendants dispute these contentions.

B.    ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

C.    JRS filed a complaint (the "Complaint") against Defendants in San Luis Obispo County Superior Court on June 7, 2019. The Complaint states claims for breach of contract, common count recovery on an open book account, declaratory relief, accounting, and to set aside fraudulent transfers. The lawsuit triggered by the Complaint (the "Action") was identified by the San Luis Obispo County Superior Court with the case number 19CV-0345.

D.    ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

E.    The Action was remanded to the San Luis Obispo County Superior Court on or about June 25, 2019. A Notice re: Transferred Action Order and Notice of Case Assignment

-1-

102419
24833364v2 / 21397.0002

OLD: 4845-9998-3786.1
NEW: 4848-9310-1226.2

issued on or about September 23, 2019 indicating that the Action had been formally transferred and reassigned the new case number 19CV05074. The Action remains pending before the Santa Barbara County Superior Court as of the Effective Date of this Agreement.

F.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

G.    The VFS Defendants filed an answer on or about September 26, 2019 in which they generally denied all allegations in the Complaint and asserted various affirmative defenses. The VFS Defendants also filed, on or about the same date, a Cross-Complaint (the "Cross-Complaint") seeking relief on the following theories: Breach of the implied covenant of good faith and fair dealing, promissory estoppel, unfair business practices, intentional interference with prospective economic advantage, and negligent interference with prospective economic advantage.

H.    JRS has assigned all agreements, invoices, and claims associated with Defendants to SABR.

I.    It was and remains the desire of the Parties to resolve the disputes between them (1) without further litigation and (2) without any admission of wrongdoing or error by any Party hereto. The Parties engaged in a confidential mediation before Hon. Richard Silver (Ret.) (the "Mediator") in Monterey, California on October 8, 2019 (the "Mediation"). At the Mediation, the Parties agreed (1) to resolve all disputes between the Parties on certain terms set forth in a Memorandum of Settlement (the "Memorandum of Settlement"), and (2) that the Parties would subsequently prepare a full settlement and release agreement. This Agreement is that agreement, supersedes the Memorandum of Settlement prepared and signed at the Mediation, and is intended to be, with the exception of those obligations arising from this Agreement, a full resolution of all claims (asserted or unasserted) between the Parties.

NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION THE SUFFICIENCY OF WHICH IS HEREBY ACKNOWLEDGED, THE PARTIES DO AGREE AS FOLLOWS:

## AGREEMENT

1.    **Incorporation of Recitals.**    The Recitals above are incorporated here as though fully set forth in this paragraph.

2.    **Resolution of VFS Indebtedness.**    VFS acknowledges that there exists, as of the Effective Date of this Agreement, an indebtedness owing by VFS to SABR (*i.e.*, the Debt.) Peter acknowledges that he is in his individual capacity a guarantor of the Debt and affirms that his signatures on those certain Continuing Personal Guaranty agreements which are attached to the Complaint (the "Guaranties") are genuine. JRS alleged in the Complaint that the amount of

-2-

102419
2483364v2 / 21397.0002

OLD: 4815-9998-1786.1
NEW: 4848-9310-1226.2

the Debt was approximately $5,366,453.60 with interest accruing thereon daily in the amount of $1,125.65. In consideration for the promises made by the VFS Defendants herein, SABR has agreed to reduce the principal balance due to $5,014,605.95, effective as of January 1, 2019 (the "Principal Amount"). The Principal Amount shall be repaid in accordance with the following:

(i.)    **Initial Payments:** VFS shall pay $390,000 to SABR on or before October 18, 2019. VFS shall pay $35,000 to SABR on or before November 7, 2019. These two payments shall collectively be referred to hereinafter as the "Initial Payments."

**Further Payments:** VFS shall make quarterly payments in the amount of $170,000, commencing on January 1, 2020 and ending on July 1, 2028 as reflected on the amortization schedule which is attached hereto as **Exhibit 1** and incorporated herein by this reference. Interest shall accrue annually at the rate of 7.0% (provided there is no default by VFS). Payments will be applied first to principal and then to outstanding interest in accordance with the amortization schedule designated here as Exhibit 1. VFS may prepay the Principal Amount, and accrued interest thereon, in full or in part, at any time without penalty.

(ii.)    Peter will execute a guaranty in the form attached hereto as **Exhibit 2** and incorporated herein by reference (the "New Guaranty"), in which he guaranties all obligations owing by VFS to SABR.

(iii.)    Peter will grant to SABR a security interest, in an amount equal to the Principal Amount, to be reflected in a recorded Deed of Trust, in the form attached hereto as **Exhibit 3** and incorporated herein by reference (the "VFS DOT"), against that certain real property located at and commonly known as 1124 Tama Lane, Santa Maria, California (the "Tama Collateral"). Peter represents that there are only two senior deeds of trust encumbering the Tama Collateral as of the Effective Date of this Agreement. Peter represents that he has not created or allowed to be created any new encumbrance against the Tama Collateral since the date of the Mediation. Peter represents that he has the authority to grant Simplot the security interest in the Tama Collateral described herein. Peter acknowledges that Simplot in entering into this Agreement is relying upon all of these representations. In the event that prior lender approval is necessary for the creation or perfection of the security interest described in this paragraph *and* such approval is denied (whether reasonably or otherwise) by said prior lender(s), then this Agreement shall not take effect. Peter and VFS agree that they will not take any action to further encumber the Tama Collateral until after such time as the VFS DOT has been recorded.

(iv.)    VFS shall grant to SABR a security interest, in an amount equal to the amount of the Debt, against all non-real property assets owned by VFS (the "Personal Property Collateral") including, without limitation, the following: Equipment, tools of the trade, accounts receivable, causes of action or claims against third parties, rights to payment, general intangibles, intellectual property, and cash in any depository account, in accordance with the terms of the form of security agreement attached hereto as **Exhibit 4** and incorporated herein by reference (the "Security Agreement"). Peter represents that there are pre-existing liens on the Personal Property (the "Senior Personal Property Liens"), as evidenced by the UCC financing statements attached hereto as **Exhibit 5** and incorporated herein by reference. VFS represents that it has the authority to grant Simplot the security interest in the Personal Property Collateral described

-3-

102419
2483364v2 / 21397.0002

OLD: 4815-9998-3786.1
NEW: 4848-9310-1226.2

herein, subject to the consent of the holders of the Senior Personal Property Liens, if required. VFS and Peter agree that they will not take any action to further encumber the Personal Property Collateral until such time as the lien described herein has been perfected by Simplot.

(v.)    Failure to make payments in the required amount or when due shall be, for VFS, an event of default under the terms of this Agreement. A payment five or more days late shall be deemed to be a material default. Payment shall be deemed "made" for purposes of this Agreement on the date that it is actually received by SABR at the address for notice designated hereinbelow. It shall be the VFS Defendants' responsibility to ensure that payment is timely received. Any insolvency proceeding, including but not limited to any petition for relief pursuant to any chapter of Title 11 of the United States Code (voluntary or involuntary) in which VFS or Peter is designated a debtor shall be deemed an event of default. A receiver taking possession of or assuming management duties over either VFS or the Tama Collateral or the Personal Property Collateral shall be deemed an event of default. Upon the occurrence of a default (or upon SABR's learning that an event of default has occurred), Simplot shall provide to VFS and its counsel written notice of default, and simultaneously provide a copy of such notice to Lynn and her counsel. Notice of default may, at SABR's election, be delivered through counsel by electronic mail to the email addresses set forth in Section 19 of this Agreement, with a confirmation notice sent by regular mail. VFS shall have fifteen (15) days from the date of SABR's written notice of default by email to entirely cure said default. Commencing on the 16th day after the date of SABR's written notice of default by email, interest shall accrue at the rate of eighteen percent per annum (18%) until the default is cured in its entirety (which cure shall, if necessary, include reimbursement to SABR of any attorneys' fees, expert witness fees, or court costs incurred by Simplot due to VFS' default.)

(vi.)    VFS and Peter agree to promptly execute such further documents as SABR may, in its discretion, believe are necessary to create, perfect, or effectuate security interests described herein. VFS and Peter further agree generally to promptly execute such documents as may in SABR's discretion be reasonably necessary in the future to effectuate this Agreement.

(vii.)    Simplot will agree to continue, in the absence of a default under the terms of this Agreement by VFS, selling products to VFS on a COD basis. Prices offered by Simplot to VFS will be similar to those prices offered by Simplot to other dealer accounts at the Guadalupe, California location. Should VFS believe in the future that Simplot's pricing is not in accordance with this paragraph, the Parties agree that such a dispute shall be brought to the Mediator (or another mutually agreeable mediator) for resolution prior to the bringing of any suit before any court of competent jurisdiction.

(viii.)    Once the Action has been dismissed, Simplot (through its counsel J. Jackson Waste of Baker Manock & Jensen, PC) will provide to VFS a letter on his law firm's letterhead stating that (1) Simplot and VFS have amicably resolved their dispute, (2) the Action has been dismissed, and (3) Simplot and VFS continue to do business together. VFS may present this letter to third parties without violating the confidentiality provision set forth hereinbelow.

-4-

102419
2483364v2 / 21397.0002

OLD: 4815-9998-3786.1
NEW: 4848-9310-1226.2

3.



OLD: 4815-9998-3786.1
NEW: 4848-9310-1226.2

102419
2483364v2 / 21397.0002



4.    **Release.**

a.    Except as to such rights or claims as may be created by this Agreement, Simplot, for itself and for its assigns, attorneys, insurers, beneficiaries, employees, officers, directors, shareholders, legal and equitable owners, members, predecessors in interest, successors in interest, agents, representatives, and any and all other persons, trusts, firms, exchanges, corporations, joint ventures, limited liability companies, partnerships or subsidiaries with whom any of the foregoing have been, are now or may hereafter be affiliated, hereby generally and specifically release and forever discharge VFS, Peter ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ and their assigns, attorneys, insurers, beneficiaries, employees, officers, directors, shareholders, legal and equitable owners, members, predecessors in interest, successors in interest, agents, representatives, and any and all other persons, trusts, firms, exchanges, corporations, joint ventures, limited liability companies, partnerships or subsidiaries with whom any of the foregoing have been, are now or may hereafter be affiliated, from any and all present, past, or future claims, demands, debts, losses, obligations, warranties, costs, expenses, rights of action, and causes of action of every kind and nature whatsoever, whether based on contract, tort, statutory, or other legal or equitable theory of recovery, known or unknown, suspected or unsuspected, existing, or claimed to exist, prior to the Effective Date.

b.    Except as to such rights or claims as may be created by this Agreement, VFS and Peter, for themselves and for their assigns, attorneys, insurers, beneficiaries, employees, officers, directors, shareholders, legal and equitable owners, members, predecessors in interest, successors in interest, agents, representatives, and any and all other persons, trusts, firms, exchanges, corporations, joint ventures, limited liability companies, partnerships or subsidiaries with whom any of the foregoing have been, are now or may hereafter be affiliated, hereby generally and specifically release and forever discharge Simplot and its assigns, attorneys, insurers, beneficiaries, employees, officers, directors, shareholders, legal and equitable owners,

-6-

102419
2483364v2 / 21397.0002

OLD: 4815-9998-3786.1
NEW: 4848-9310-1226.2

members, predecessors in interest, successors in interest, agents, representatives, and any and all other persons, trusts, firms, exchanges, corporations, joint ventures, limited liability companies, partnerships or subsidiaries with whom any of the foregoing have been, are now or may hereafter be affiliated, from any and all present, past, or future claims, demands, debts, losses, obligations, warranties, costs, expenses, rights of action, and causes of action of every kind and nature whatsoever, whether based on contract, tort, statutory, or other legal or equitable theory of recovery, known or unknown, suspected or unsuspected, existing, or claimed to exist, prior to the Effective Date.



5.    **1542 Waiver.** Except for obligations arising out of this Agreement the releases set forth hereinabove shall be a full release of all known and unknown claims notwithstanding contrary language in Civil Code § 1542 or any other provision of law. The Parties acknowledge that they have read section 1542 of the California Civil Code, have discussed that statute with their attorneys, and fully understand its provisions and effects. Section 1542 of the Civil Code provides as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

With full awareness and understanding of the above statute, the Parties hereby waive and relinquish all rights thereunder, as well as those rights under any comparable law of any other state or jurisdiction, or any comparable common law or equitable principle. The Parties, by entering into this Agreement, have accepted the risk that unknown claims may exist that are

-7-

102419
2483364v2 / 21397.0002

OLD: 1815-9998-3786.1
NEW: 4848-9310-1226.2

being waived and forever released hereby.  Each party acknowledges and warrants that he, she, or it has been advised by counsel regarding the meaning and effect of this waiver.

6.    **Dismissal.**

a.    In exchange for the promises, representations, and covenants herein, within ten (10) days of the last signature to this Settlement Agreement, JRS shall file a dismissal of the Complaint and the Action, with prejudice.

b.    In exchange for the promises, representations, and covenants herein, within ten (10) days of the last signature to this Settlement Agreement, VFS and Peter shall file a dismissal of the VFS Cross-Complaint and the Action, with prejudice.

c.    Notwithstanding the dismissals, the Parties agree that the Santa Barbara Superior Court shall retain jurisdiction under California Code of Civil Procedure Section 664.6, to enforce the terms of this Settlement Agreement.

7.    **Authorization of Authority; Representations and Warranties.**  No Party or any agent/representative/attorney of any Party hereto has made any statement to any other Party (or any agent/representative/attorney thereof) regarding any fact relied upon in entering into this Agreement, and no Party is relying on any statement, representation or promise of any other Party (or any agent/representative/attorney thereof) except as expressly set forth in this Agreement.  This is a fully integrated agreement.  Further, the Parties warrant and represent that whomever signs this Agreement on behalf of that Party is duly authorized to do so.

8.    **Attorneys' Fees.**    The Parties hereto shall bear their own costs and attorneys' fees incurred in connection with the Action and the negotiation and preparation of this Agreement ██████████████████████████████████████████ However, in the event of any action (including before the Mediator) arising from or to enforce or interpret this Agreement, or any motion filed pursuant to Section 664.6 of the California Code of Civil Procedure arising out of this Agreement (which motions the Court shall have jurisdiction to hear), and any appeal of either, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs.

9.    **Waiver.**    No action or omission by any Party shall be deemed to be a waiver of any right conferred hereunder or recognized herein.

10.    **Construction.**    This Agreement is the product of a bilateral, arm's-length negotiation between parties represented by competent counsel.  As a result, the Parties hereby waive the common law and statutory rule that any ambiguity in this Agreement should be construed against the drafter.  Language in this Agreement shall be construed in all instances according to its fair meaning and with the purpose of effectuating the purpose of this Agreement.

11.    **Successors and Assigns.**    This Agreement shall be binding upon, and shall inure to the benefit of, and be enforceable by the Parties and their respective present and former

-8-

OLD: 4815-9998-3786.1
NEW: 4848-9310-1226.2

102419
2483364v2 / 21397.0002

partners, officers, directors, shareholders, agents, servants, employees, heirs, attorneys, parent companies, subsidiaries, affiliated companies, and predecessors and successors in interest as it is applicable to the Parties hereto.

12. **Headings.** Heading and captions in this Agreement exist solely for the purpose of convenience. They are to be given no legal effect.

13. **Severability.** Should any portion of this Agreement be declared by a court of competent jurisdiction to be illegal, invalid, unenforceable, or void, the offending portion shall be deemed stricken but the remaining portions of the Agreement shall be given their full force and effect as though the offending portion was never included in the Agreement to begin with.

14. **Entire Agreement With No Oral Modification.** This Agreement constitutes the full and entire Agreement between the Parties and supersedes all prior correspondence or drafts of this Agreement, including, without limitation, the prior Memorandum of Settlement signed by the Parties at Mediation. Each Party acknowledges that there are no representations, warranties, agreements, arrangements or undertakings, oral or written, between the Parties relating to the subject matter of this Agreement which are not fully expressed herein.

15. **Counterparts; Facsimile or Electronic Signatures.** This Agreement may be executed in counterparts and shall be effective upon execution of the final signature. The parties agree that copies of this Agreement may, subject to any objections not relating to the authenticity of this document, be admitted into evidence in any judicial, arbitral, administrative or other evidentiary proceeding of any kind, and that the filing party will request to file or submit it under seal to preserve confidentiality in accordance with Section 17 below. **Facsimile or electronic transmission of any signed original of this Agreement, and retransmission of any signed facsimile or electronic transmission, shall be the same as delivery of an original and shall be binding upon the Parties. At the request of any Party, the Parties will confirm facsimile or electronic transmission by signing a duplicate original document.**

16. **Mediation Privilege.** Although this Agreement was the result of the Parties' participation in a mediation, the Parties all waive any applicable settlement, mediation, or other privilege which would prevent this Agreement from being entered into evidence in any judicial proceeding for the enforcement or interpretation of this Agreement (or any proceeding for the enforcement of any security interest created hereunder.) The Parties agree that the mediation privilege shall never be applied in a manner that renders this Agreement unenforceable.

17.



-9-

102419
243336-v2 / 21397.0002

OLD. 4815-9998-3786.1
NEW: 4848-9310-1226.2



18. **Compton Family Trust Termination.** Peter and Lynn represent that the Compton Family Trust has, as of the Effective Date of this Agreement, been validly revoked and that neither the Compton Family Trust, nor Peter in his capacity as trustee of the same, ████████ ███████████ any other person in his capacity as trustee of the same, currently holds any claim against Simplot and/or its affiliates, subsidiaries, employees, officers, shareholders, directors, agents, or attorneys.

19.    **Notices.**    Notices to the Parties shall be sent to the following physical and email addresses:

JRS:    J. R. Simplot Company
Attn: Legal
P.O. Box 27
Boise, ID 83707
Beth.coonts@simplot.com

With a copy to:
Baker Manock & Jensen, PC
Attn: J. Jackson Waste
5260 North Palm, Suite 421
Fresno, CA 93704
jwaste@bakermanock.com

SABR:    Simplot AB Retail, Inc.
Attn: Legal
P.O. Box 9296
Boise, ID 83707
Beth.coonts@simplot.com

-10-

OLD: 4815-9998-3786.1
NEW: 4848-9310-1226.2

102419
2483364v2 / 21397.0002

With a copy to:
Baker Manock & Jensen, PC
Attn: J. Jackson Waste
5260 North Palm, Suite 421
Fresno, CA 93704
jwaste@bakermanock.com

VFS and Peter:      Valley Farm Supply, Inc.
Attn:   Peter J. Compton
1124 Tama Lane
Santa Maria, CA 93459
Pete Compton (petevfs@gmail.com)
Jeremiah Reeves (jrvfs45@gmail.com)
Shelley Bradley (shellevvfs@yahoo.com)

With a copy to:
Anastassiou & Associates
Attn:   Effie F. Anastassiou, Esq.
P. O. Box 2210
Salinas, CA 93902
effieesq@salinasaglaw.com




(Signatures on following page.)

-11-

OLD: 4815-9998-4786.1
NEW: 4848-9310-1226.2
102419
2483364v2 / 21397.0002

"JRS"

J. R. Simplot Company,
a Nevada corporation

By _____          Dated:  January 3, 2020
    James B. Alderman, Secretary


"SABR"

Simplot AB Retail, Inc.,
a Delaware corporation

By _____          Dated:  January 3, 2020
    James B. Alderman, Secretary


"VFS"

By _____          Dated:  January 3, 2020
    Peter J. Compton
    President and CEO


"Peter"

By _____          Dated:  January 3, 2020
    Peter J. Compton, Individually and in his
    capacity as a Former Co-Trustee of the
    Compton Family Trust

-12-

102419
248336v2 / 21397.0002

OLD: 4815-9998-3786.1
NEW: 4848-9310-1226.2

APPROVED AS TO FORM ONLY:

By: _____ for

    J. Jackson White
    Baker, Manock & Jensen
    Counsel for Simplot


By: _____

    Effie Anastassiou
    Anastassiou & Associates
    Counsel for Peter, VFS



-13-

102419
2483364v2/21397.0002

OLD: 4815-9998-3786.1
NEW: 4848-9310-1276.2

"JRS"

J. R. Simplot Company,
a Nevada corporation

By _____          Dated: January 3, 2020
    James B. Alderman, Secretary


"SABR"

Simplot AB Retail, Inc.,
a Delaware corporation

By _____          Dated: January 3, 2020
    James B. Alderman, Secretary

"VFS"

By _____          Dated: January 3, 2020
    Peter J. Compton
    President and CEO


"Peter"

By _____          Dated: January 3, 2020
    Peter J. Compton, Individually and in his
    capacity as a former Co-Trustee of the
    Compton Family Trust

-12-

B2419
2483364v2 / 21397.0002

OLD: 4815-9938-3786.1
NEW: 4848-8310-1226.2

APPROVED AS TO FORM ONLY:

By: _____

     J. Jackson Waste
     Baker, Manock & Jensen
     Counsel for Simplot

By: _____

     Effie Anastassiou
     Anastassiou & Associates
     Counsel for Peter, VFS



-13-

APPROVED AS TO FORM ONLY:

By: _____
      J. Jackson Waste
      Baker, Manock & Jensen
      Counsel for Simplot

By: _____
      Effie Anastassiou
      Anastassiou & Associates
      Counsel for Peter, VFS



-13-

OLD: 4815-9998-3786.1
NEW: 4848-9310-4226.2

102419
2483.36/8/2/21.397.0002

"JRS"

J. R. Simplot Company,
a Nevada corporation

By _____          Dated:  January 3, 2020
    James B. Alderman, Secretary

"SABR"

Simplot AB Retail, Inc.,
a Delaware corporation

By _____          Dated:  January 3, 2020
    James B. Alderman, Secretary

"VFS"

By _____          Dated:  January 3, 2020
    Peter J. Compton
    President and CEO

"Peter"

By _____          Dated:  January 3, 2020
    Peter J. Compton, Individually and in his
    capacity as a former Co-Trustee of the
    Compton Family Trust

-12-

# EXHIBIT 1

10/16/2019  4:04:41 PM  Page 1

Rate Period ..................... : Quarterly

Nominal Annual Rate .... : 7.000 %

## CASH FLOW DATA

| | Event | Date | Amount | Number | Period | End Date |
|---|---|---|---|---|---|---|
| 1 | Loan | 01/01/2019 | 5,014,605.95 | 1 | | |
| 2 | Payment | 10/18/2019 | 390,000.00 | 1 | | |
| | Principal First | | | | | |
| 3 | Payment | 11/07/2019 | 35,000.00 | 1 | | |
| | Principal First | | | | | |
| 4 | Payment | 01/01/2020 | 170,000.00 | 34 | Quarterly | 04/01/2028 |
| | Principal First | | | | | |
| 5 | Payment | 07/01/2028 | 199,416.47 | 1 | | |

## AMORTIZATION SCHEDULE - U.S. Rule (no compounding)

| | Date | Payment | Interest Accrued | Interest Paid | Principal Paid | Balance Due Interest | Balance Due Principal | Balance Due Total |
|---|---|---|---|---|---|---|---|---|
| Loan | 01/01/2019 | | 0.00 | 0.00 | 0.00 | 0.00 | 5,014,605.95 | 5,014,605.95 |
| 1 | 10/18/2019 | 390,000.00 | 279,615.80 | 0.00 | 390,000.00 | 279,615.80 | 4,624,605.95 | 4,904,221.75 |
| 2 | 11/07/2019 | 35,000.00 | 17,738.21 | 0.00 | 35,000.00 | 297,354.01 | 4,589,605.95 | 4,886,959.96 |
| 2019 Totals | | 425,000.00 | 297,354.01 | 0.00 | 425,000.00 | | | |
| 3 | 01/01/2020 | 170,000.00 | 48,410.91 | 0.00 | 170,000.00 | 345,764.92 | 4,419,605.95 | 4,765,370.87 |
| 4 | 04/01/2020 | 170,000.00 | 77,343.10 | 0.00 | 170,000.00 | 423,108.02 | 4,249,605.95 | 4,672,713.97 |
| 5 | 07/01/2020 | 170,000.00 | 74,368.10 | 0.00 | 170,000.00 | 497,476.12 | 4,079,605.95 | 4,577,082.07 |
| 6 | 10/01/2020 | 170,000.00 | 71,393.10 | 0.00 | 170,000.00 | 568,869.22 | 3,909,605.95 | 4,478,475.17 |
| 2020 Totals | | 680,000.00 | 271,515.21 | 0.00 | 680,000.00 | | | |
| 7 | 01/01/2021 | 170,000.00 | 68,418.10 | 0.00 | 170,000.00 | 637,287.32 | 3,739,605.95 | 4,376,893.27 |
| 8 | 04/01/2021 | 170,000.00 | 65,443.10 | 0.00 | 170,000.00 | 702,730.42 | 3,569,605.95 | 4,272,336.37 |
| 9 | 07/01/2021 | 170,000.00 | 62,468.10 | 0.00 | 170,000.00 | 765,198.52 | 3,399,605.95 | 4,164,804.47 |
| 10 | 10/01/2021 | 170,000.00 | 59,493.10 | 0.00 | 170,000.00 | 824,691.62 | 3,229,605.95 | 4,054,297.57 |
| 2021 Totals | | 680,000.00 | 255,822.40 | 0.00 | 680,000.00 | | | |
| 11 | 01/01/2022 | 170,000.00 | 56,518.10 | 0.00 | 170,000.00 | 881,209.72 | 3,059,605.95 | 3,940,815.67 |
| 12 | 04/01/2022 | 170,000.00 | 53,543.10 | 0.00 | 170,000.00 | 934,752.82 | 2,889,605.95 | 3,824,358.77 |
| 13 | 07/01/2022 | 170,000.00 | 50,568.10 | 0.00 | 170,000.00 | 985,320.92 | 2,719,605.95 | 3,704,926.87 |
| 14 | 10/01/2022 | 170,000.00 | 47,593.10 | 0.00 | 170,000.00 | 1,032,914.02 | 2,549,605.95 | 3,582,519.97 |
| 2022 Totals | | 680,000.00 | 208,222.40 | 0.00 | 680,000.00 | | | |
| 15 | 01/01/2023 | 170,000.00 | 44,618.10 | 0.00 | 170,000.00 | 1,077,532.12 | 2,379,605.95 | 3,457,138.07 |
| 16 | 04/01/2023 | 170,000.00 | 41,643.10 | 0.00 | 170,000.00 | 1,119,175.22 | 2,209,605.95 | 3,328,781.17 |
| 17 | 07/01/2023 | 170,000.00 | 38,668.10 | 0.00 | 170,000.00 | 1,157,843.32 | 2,039,605.95 | 3,197,449.27 |
| 18 | 10/01/2023 | 170,000.00 | 35,693.10 | 0.00 | 170,000.00 | 1,193,536.42 | 1,869,605.95 | 3,063,142.37 |
| 2023 Totals | | 680,000.00 | 160,622.40 | 0.00 | 680,000.00 | | | |
| 19 | 01/01/2024 | 170,000.00 | 32,718.10 | 0.00 | 170,000.00 | 1,226,254.52 | 1,699,605.95 | 2,925,860.47 |
| 20 | 04/01/2024 | 170,000.00 | 29,743.10 | 0.00 | 170,000.00 | 1,255,997.62 | 1,529,605.95 | 2,785,603.57 |
| 21 | 07/01/2024 | 170,000.00 | 26,768.10 | 0.00 | 170,000.00 | 1,282,765.72 | 1,359,605.95 | 2,642,371.67 |
| 22 | 10/01/2024 | 170,000.00 | 23,793.10 | 0.00 | 170,000.00 | 1,306,558.82 | 1,189,605.95 | 2,496,164.77 |
| 2024 Totals | | 680,000.00 | 113,022.40 | 0.00 | 680,000.00 | | | |
| 23 | 01/01/2025 | 170,000.00 | 20,818.10 | 0.00 | 170,000.00 | 1,327,376.92 | 1,019,605.95 | 2,346,982.87 |
| 24 | 04/01/2025 | 170,000.00 | 17,843.10 | 0.00 | 170,000.00 | 1,345,220.02 | 849,605.95 | 2,194,825.97 |
| 25 | 07/01/2025 | 170,000.00 | 14,868.10 | 0.00 | 170,000.00 | 1,360,088.12 | 679,605.95 | 2,039,694.07 |
| 26 | 10/01/2025 | 170,000.00 | 11,893.10 | 0.00 | 170,000.00 | 1,371,981.22 | 509,605.95 | 1,881,587.17 |
| 2025 Totals | | 680,000.00 | 65,422.40 | 0.00 | 680,000.00 | | | |
| 27 | 01/01/2026 | 170,000.00 | 8,918.10 | 0.00 | 170,000.00 | 1,380,899.32 | 339,605.95 | 1,720,505.27 |
| 28 | 04/01/2026 | 170,000.00 | 5,943.10 | 0.00 | 170,000.00 | 1,386,842.42 | 169,605.95 | 1,556,448.37 |
| 29 | 07/01/2026 | 170,000.00 | 2,968.10 | 394.05 | 169,605.95 | 1,389,416.47 | 0.00 | 1,389,416.47 |
| 30 | 10/01/2026 | 170,000.00 | 0.00 | 170,000.00 | 0.00 | 1,219,416.47 | 0.00 | 1,219,416.47 |
| 2026 Totals | | 680,000.00 | 17,829.30 | 170,394.05 | 509,605.95 | | | |

10/16/2019  4:04:41 PM  Page 2

| | Date | Payment | Interest Accrued | Interest Paid | Principal Paid | Balance Due | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Interest | Principal | Total |
| 31 | 01/01/2027 | 170,000.00 | 0.00 | 170,000.00 | 0.00 | 1,049,416.47 | 0.00 | 1,049,416.47 |
| 32 | 04/01/2027 | 170,000.00 | 0.00 | 170,000.00 | 0.00 | 879,416.47 | 0.00 | 879,416.47 |
| 33 | 07/01/2027 | 170,000.00 | 0.00 | 170,000.00 | 0.00 | 709,416.47 | 0.00 | 709,416.47 |
| 34 | 10/01/2027 | 170,000.00 | 0.00 | 170,000.00 | 0.00 | 539,416.47 | 0.00 | 539,416.47 |
| 2027 Totals | | 680,000.00 | 0.00 | 680,000.00 | 0.00 | | | |
| 35 | 01/01/2028 | 170,000.00 | 0.00 | 170,000.00 | 0.00 | 369,416.47 | 0.00 | 369,416.47 |
| 36 | 04/01/2028 | 170,000.00 | 0.00 | 170,000.00 | 0.00 | 199,416.47 | 0.00 | 199,416.47 |
| 37 | 07/01/2028 | 199,416.47 | 0.00 | 199,416.47 | 0.00 | 0.00 | 0.00 | 0.00 |
| 2028 Totals | | 539,416.47 | 0.00 | 539,416.47 | 0.00 | | | |
| Grand Totals | | 6,404,416.47 | 1,389,810.52 | 1,389,810.52 | 5,014,605.95 | | | |

# EXHIBIT 2

## SIMPLOT AB RETAIL, INC.
### (DBA SIMPLOT GROWER SOLUTIONS)

### CONTINUING PERSONAL GUARANTY

1.     In consideration of Simplot AB Retail, Inc., dba Simplot Grower Solutions ("**Simplot**" which, for purposes of this Guaranty, includes each of Simplot's affiliated entities) granting (or continuing to grant) credit to the Applicant named on the signature page below ("**Applicant**") (which is a corporation owned (in whole or in part) by Guarantor) or providing certain accommodations to Applicant or Guarantor including, without limitation, those accommodations set forth in that certain Settlement and Release Agreement by and among Simplot, the Applicant and the Guarantor (the "**Settlement Agreement**"), the undersigned Guarantor hereby guaranties (as primary obligor and not only as surety) the full and timely payment and performance of all of Applicant's Obligations to Simplot, and promises to pay when due (whether or not suit is brought) all monies Applicant at any time owes to Simplot pursuant to the Settlement Agreement and related security agreements.     Guarantor understands and acknowledges that Simplot is under no obligation to extend further credit to Applicant Valley Farm Supply Inc. or Guarantor.     Guarantor agrees that should any indebtedness arise in the future as a result of any extension of credit by Simplot to Applicant Guarantor will at that time execute an additional guaranty in a form acceptable to Simplot.  If for any reason Applicant does not pay any amount it owes to Simplot thereunder, the Guarantor will immediately on demand pay the relevant amount to Simplot without Simplot having to take action against Applicant or Guarantor. The "**Obligations**" covered by this Guaranty are any and all financial and other obligations of the Applicant to Simplot created by the Settlement     Agreement     and related     security agreements,     including all debts,     liabilities and obligations of every kind arising therefrom, whether direct or indirect, absolute or contingent, liquidated or unliquidated, whether of the same or a different nature and whether existing now or in the future, including interest thereon and all costs, expenses, fees (including reasonable attorneys' fees and expert witness fees) paid or incurred by Simplot at any time in attempting to collect any of the foregoing, to realize on any collateral securing any of the foregoing or this Guaranty, and to enforce this Guaranty, whether such costs, expenses or fees are paid or incurred before or after starting litigation or at trial, on appeal, after judgment or in any bankruptcy or other proceeding.

2.     Guarantor acknowledges that it will materially benefit from Applicant's relationship with Simplot and the credit Simplot may provide, that Simplot would not extend or continue to extend credit to Applicant without this Guaranty, that Simplot would not provide certain accommodations to Applicant without this Guaranty, and that this Guaranty is Guarantor's valid and binding obligation and is enforceable against Guarantor in accordance with its terms.

3.     This Guaranty is unconditional, continuing, and will remain in full force and effect until all Obligations have been irrevocably paid in full.  This Guaranty shall not be revoked by death, dissolution, merger, bankruptcy, incompetency or insolvency of the Guarantor.  This Guaranty shall remain in full force and effect with respect to the Guarantor until the Obligations have been paid in full.

4.     Guarantor waives all rights of subrogation, exoneration, contribution, reimbursement, indemnity or otherwise arising therefrom against the Applicant and shall be subordinate and junior in right of payment to the prior indefeasible payment in full to Simplot of all Obligations.  Guarantor shall refrain from taking any action or commencing any proceeding against the Applicant (or its successors or assigns, whether in connection with a bankruptcy proceeding or otherwise) to recover any amounts in respect of payments made under this Guaranty unless and until the Obligations are indefeasibly paid to Simplot and performed in full.

5.     Guarantor further waives: (i) promptness, diligence, notice of acceptance, presentment, demand for performance, notice of non-performance, default, acceleration, protest or dishonor and any other notice with respect to any of the Obligations and this Guaranty and any requirement that Simplot protect, secure, perfect or insure any property; (ii) any defense based on any right of set-off or recoupment or counterclaim against or in respect of the Obligations; (iii) any requirement of Simplot to assert any claim or demand or to exercise or enforce any right or remedy; (iv) any requirement to continue advancing credit or selling products or services to Applicant; (v) any requirement to resort for payment or to proceed directly or at once against any person, including Applicant or any other guarantor; (vi) any requirement to proceed directly against or exhaust any collateral held by Simplot from Applicant, any other guarantor, or any other person; (vii) any rights or defenses arising by reason of any "one action" or "anti-deficiency" law or any other law which may prevent Simplot from bringing any action, including a claim for deficiency, against   Guarantor,   before   or   after   Simplot's

commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (viii) any election of remedies by Simplot which adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Applicant for reimbursement, including any loss of rights Guarantor may suffer by reason of any law limiting, qualifying or discharging the Obligations; and (ix) notice of Simplot's acceptance and reliance on this Guaranty, notice that Applicant is incurring obligations to Simplot, any change in those obligations, and notice of default by Applicant.

Guarantor waives all right and defenses that Guarantor may have because the Obligations are secured by real property. This means, among other things: (1) Simplot may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Applicant; and (2) if Simplot forecloses on any real property collateral pledged by Applicant, (a) the amount of the Obligations may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, and (b) Simplot may collect from Guarantor even if Simplot, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Applicant. This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because the Obligations are secured by real property.

6.      Guarantor's obligations shall not be affected, excused, modified or impaired by any event or circumstance, or any defense Applicant may have to any of the Obligations to Simplot (including death or disability of the Guarantor, any change in Applicant's or Guarantor's legal structure or organization, changes in control of Applicant or Guarantor, and circumstances of or changes in the nature of or in any terms of the Obligations) other than the full and irrevocable payment to Simplot of all Obligations. This Guaranty is binding on Guarantor (and if more than one Guarantor, on each Guarantor jointly and severally), Guarantor's heirs, successors, assigns, and representatives and survivors, and shall inure to the benefit of Simplot and its successors, assigns and affiliates.

7.      Guarantor authorizes Simplot, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (i) to alter, compromise, renew, extend, accelerate, or otherwise change on one or more occasions the time for payment or other terms of the Obligations or any part of the Obligations, including increases and decreases of the amount of the Obligations and/or rate of finance charges on the Obligations; (ii) to take and hold security for the payment of this Guaranty or the Obligations, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (iii) to release, substitute, agree not to sue, or deal with any one or more of Applicant's sureties, endorsers, or other guarantors on any terms or in any manner Simplot may choose; (iv) to determine how, when and what application of payments and credits shall be made on the Obligations; (v) to apply such security and direct the order or manner of sale thereof, including any non-judicial sale permitted by the terms of the controlling security agreement or deed of trust, as Simplot in its discretion may determine; (vi) to sell, transfer, assign or grant participations in all or any part of the Obligations; and (vii) to assign or transfer this Guaranty in whole or in part.

8.      If any provision of this Guaranty is held to be illegal, invalid or unenforceable to any extent in any context, that provision shall be modified or restricted however necessary to render it valid, legal, and enforceable in that context. Modification or restriction may be accomplished by mutual agreement between Simplot and Guarantor; or, alternatively, by disposition of a court of competent jurisdiction. If the provision cannot be modified or restricted, then: that provision will be fully severable, this Guaranty will be construed and enforced as if the illegal, invalid or unenforceable provision was never a part of this Guaranty, and the remaining provisions of this Guaranty will remain in full force and effect and will not be affected by the illegal, invalid or unenforceable provision or by its severance from this Guaranty. The undersigned parties agree that this Guaranty was the product of bilateral, arms' length negotiation between parties who are (or have been given the opportunity to be) represented by competent counsel. As such, the undersigned parties waive any statutory or common law presumption that ambiguities shall be construed against the drafter and agree that ambiguities in this Guaranty (if any are deemed to exist) shall not be construed for or against any party. A signed copy of this Guaranty delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Guaranty. The word "including" (and its variants) in this Guaranty will be deemed to be followed by "without limitation." The words "execution," "signed," "signature," and words of similar import in the Guaranty shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed

signatures or a paper-based recordkeeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.) and any similar state laws including those based on the Uniform Electronic Transactions Act.

9.      This Guaranty will be governed by California law without regard to its conflict of laws provisions. Simplot's rights and remedies are cumulative and non-exclusive.

**JUDICIAL REFERENCE:**

ANY DISPUTE REGARDING THE INTERPRETATION, ENFORCEMENT, OR ENFORCEABILITY OF THIS AGREEMENT OR ANY OTHER DISPUTE REGARDING, RELATING TO, OR ARISING OUT OF THIS AGREEMENT OR THE TRANSACTION CONTEMPLATED HEREIN SHALL BE DETERMINED BY A GENERAL REFERENCE PROCEEDING IN ACCORDANCE WITH THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 THROUGH 645.1. THE PARTIES INTEND THIS GENERAL REFERENCE AGREEMENT TO BE SPECIFICALLY ENFORCEABLE. VENUE FOR THE REFERENCE PROCEEDING SHALL BE IN THE COUNTY OF SANTA BARBARA, CALIFORNIA.

(b)      UPON THE WRITTEN REQUEST OF ANY PARTY, THE PARTIES SHALL SELECT A SINGLE REFEREE, WHO SHALL BE A RETIRED JUDGE OR JUSTICE. IF THE PARTIES DO NOT AGREE UPON A REFEREE WITHIN 10 DAYS OF SUCH WRITTEN REQUEST, THEN, ANY PARTY SHALL HAVE THE RIGHT TO REQUEST THE COURT TO APPOINT A REFEREE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 640(b). THE REFEREE SHALL BE APPOINTED TO SIT WITH ALL OF THE POWERS PROVIDED BY LAW. PENDING APPOINTMENT OF THE REFEREE, THE COURT SHALL HAVE THE POWER TO ISSUE TEMPORARY OR PROVISIONAL REMEDIES.

(c)      THE REFEREE SHALL DETERMINE THE MANNER IN WHICH THE REFERENCE PROCEEDING IS CONDUCTED INCLUDING THE TIME AND PLACE OF HEARINGS, THE ORDER OF PRESENTATION OF EVIDENCE, AND ALL OTHER QUESTIONS THAT ARISE WITH RESPECT TO THE COURSE OF THE REFERENCE PROCEEDING. ALL PROCEEDINGS AND HEARINGS CONDUCTED BEFORE THE REFEREE, EXCEPT FOR TRIAL, SHALL BE CONDUCTED WITHOUT A COURT REPORTER, EXCEPT WHEN ANY PARTY SO REQUESTS A COURT REPORTER AND A TRANSCRIPT IS ORDERED, A COURT REPORTER SHALL BE USED AND THE REFEREE SHALL BE PROVIDED A COURTESY COPY OF THE TRANSCRIPT. THE PARTY MAKING SUCH REQUEST SHALL HAVE THE OBLIGATION TO ARRANGE FOR AND PAY THE COSTS OF THE COURT REPORTER, PROVIDED THAT SUCH COSTS, ALONG WITH THE REFEREE'S FEES, SHALL ULTIMATELY BE BORNE BY THE PARTY WHO DOES NOT PREVAIL, AS DETERMINED BY THE REFEREE.

(d)      THE REFEREE MAY REQUIRE ONE OR MORE PREHEARING CONFERENCES. THE PARTIES HERETO SHALL BE ENTITLED TO DISCOVERY, AND THE REFEREE SHALL OVERSEE DISCOVERY IN ACCORDANCE WITH THE RULES OF DISCOVERY, AND SHALL ENFORCE ALL DISCOVERY ORDERS IN THE SAME MANNER AS ANY TRIAL COURT JUDGE IN PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA.

(e)      THE REFEREE SHALL APPLY THE RULES OF EVIDENCE APPLICABLE TO PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA AND SHALL DETERMINE ALL ISSUES IN ACCORDANCE WITH CALIFORNIA SUBSTANTIVE AND PROCEDURAL LAW. THE REFEREE SHALL BE EMPOWERED TO ENTER EQUITABLE AS WELL AS LEGAL RELIEF AND RULE ON ANY MOTION WHICH WOULD BE AUTHORIZED IN A TRIAL, INCLUDING MOTIONS FOR DEFAULT JUDGMENT OR SUMMARY JUDGMENT. THE REFEREE SHALL REPORT HIS OR HER DECISION, WHICH REPORT SHALL ALSO INCLUDE FINDINGS OF FACT AND CONCLUSIONS OF LAW. THE REFEREE SHALL ISSUE A DECISION AND PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE, SECTION 644, THE REFEREE'S DECISION SHALL BE ENTERED BY THE COURT AS A JUDGMENT IN THE SAME MANNER AS IF THE ACTION HAD BEEN TRIED BY THE COURT. THE FINAL JUDGMENT OR ORDER FROM ANY APPEALABLE DECISION OR ORDER ENTERED BY THE REFEREE SHALL BE FULLY APPEALABLE AS IF IT HAS BEEN ENTERED BY THE COURT.