Case 9:20-bk-11072-DS    Doc 162-1    Filed 03/15/21    Entered 03/15/21 16:51:55    Desc
                    Volume(s) two    Page 1 of 30
Case 9:20-bk-11072-DS    Claim 19 Part 2    Filed 12/17/20    Desc Exhibit Settlement and
                    Release Agreement    Page 29 of 80

(f)    THE PARTIES RECOGNIZE AND AGREE THAT ALL CLAIMS RESOLVED IN A GENERAL REFERENCE PROCEEDING PURSUANT HERETO WILL BE DECIDED BY A REFEREE AND NOT BY A JURY. AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR OWN CHOICE, EACH PARTY HERETO KNOWINGLY AND VOLUNTARILY AND FOR THEIR MUTUAL BENEFIT AGREES THAT THIS REFERENCE PROVISION SHALL APPLY TO ANY DISPUTE BETWEEN THEM THAT ARISES OUT OF OR IS RELATED TO THIS AGREEMENT.

10.    This Guaranty (and any additional document related to financial assurances provided by Guarantor) contains all of the terms and agreements governing Guarantor's guaranty of Applicant's Obligations, and supersedes all prior understandings, statements, or agreements about that subject (none of which are binding or may be relied on), including, without limitation, any and all prior guaranties executed by Guarantor in favor of Simplot.    To be effective, a

waiver of any provision of this Guaranty must be specifically stated in a signed document. No waiver will result from course of dealing, estoppel, waiver, or implied amendment (including Simplot's acceptance of any late or partial payment or our delay in exercising any right or remedy under this Guaranty). This provision may NOT be orally modified.

11.    Guarantor authorizes Simplot, at Simplot's sole expense, to obtain at any time before or during the time this Guaranty is in effect consumer and/or business credit reports from consumer and/or commercial credit reporting agencies and other financial information from Guarantor's references, banks and past or present creditors.    Guarantor agrees to sign any other documents necessary for Simplot to obtain credit reports or financial information. Guarantor also agrees to provide personal and/or business financial information and consents (if required by law) to Simplot's collection, use and disclosure of this information to enable Simplot to determine Guarantor's creditworthiness and to establish, maintain and manage a relationship with Guarantor.

| Guarantor name: Peter J. Compton | Guarantor name: |
| Guarantor signature: | Guarantor signature: |
| Date:  January 3, 2020 | Date: |
| Guarantor address:  1124 Tama Lane, Santa Maria, California 93455 | Guarantor address: |
| Name of **Applicant** whose Obligations are being guaranteed: Valley Farm Supply, Inc. | |

Case 9:20-bk-11072-DS    Doc 162-1    Filed 03/15/21    Entered 03/15/21 16:51:55    Desc
Case 9:20-bk-11072-DS    Claim 10-1 Part 2 Filed 12/10/20    Desc Exhibit Settlement and
Volume(s) two    Page 2 of 30
Release Agreement    Page 30 of 80

# EXHIBIT 3

Case 9:20-bk-11072-DS    Doc 162-1    Filed 03/15/21    Entered 03/15/21 16:51:55    Desc
Volume(s) two    Page 3 of 30
Case 9:20-bk-11072-DS    Claim 19 Part 2    Filed 12/17/20    Desc Exhibit Settlement and
Release Agreement    Page 31 of 80

RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:

J. R. Simplot Company
Attn: Beth Coonts
P.O. Box 27
Boise, ID 83707

_____
(Space above this line for Recorder's use)

**THIS INSTRUMENT SECURES OBLIGATIONS WHICH MAY CONTAIN PROVISIONS FOR ADJUSTMENTS IN THE INTEREST RATE AND PAYMENT AMOUNTS AND/OR A BALLOON PAYMENT.**

**THIS INSTRUMENT CONSTITUTES A SECURITY AGREEMENT AS THAT TERM IS DEFINED IN THE CALIFORNIA UNIFORM COMMERCIAL CODE. PORTIONS OF THE COLLATERAL ARE GOODS THAT ARE OR ARE TO BECOME FIXTURES ON THE LAND DESCRIBED IN EXHIBIT A HERETO. THIS INSTRUMENT IS INTENDED TO SERVE AS A FIXTURE FILING AND IS TO BE RECORDED IN THE REAL ESTATE RECORDS OF EACH COUNTY IN WHICH SAID LAND OR ANY PORTION THEREOF IS LOCATED AND INDEXED AS BOTH A DEED OF TRUST AND A FIXTURE FILING. TRUSTOR (DEFINED BELOW) IS THE OWNER OF A RECORD INTEREST IN THE LAND DESCRIBED IN EXHIBIT A HERETO. THE ADDRESS OF TRUSTOR (DEBTOR) AND BENEFICIARY (DEFINED BELOW), AS BENEFICIARY (SECURED PARTY) ARE SET FORTH ON THE FIRST PAGE OF THIS DEED OF TRUST.**

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

THIS DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (this "Deed of Trust") is made as of January 3, 2020 by Peter J. Compton , an individual ("Trustor"), as trustor, whose address is 1124 Tama Lane, Santa Maria, California, 93455, to CHICAGO TITLE INSURANCE COMPANY ("Trustee"), as trustee, whose address is 7330 N. Palm Avenue, #101, Fresno, California 93711, for the benefit of SIMPLOT AB RETAIL, INC. ("Beneficiary"), as beneficiary, whose address is 1099 W. Front Street, Boise, Idaho 83707.

### PRELIMINARY STATEMENT:

Trustor has executed and delivered to Beneficiary that certain Continuing Personal Guaranty dated January 3, 2020, (as amended from time to time, the "Guaranty"), pursuant to which the Trustor has guaranteed the payment by Valley Farm Supply, Inc. ("Customer") to the Beneficiary of the indebtedness and obligations described therein.

2485269v2 / 21397.0002

NOW, THEREFORE, in consideration of Beneficiary agreeing to extend credit to Customer or providing certain accommodations to Customer, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Trustor agrees as follows:

**ARTICLE I**
**GRANT**

1.1    <u>Grant</u>.  Trustor hereby irrevocably grants, bargains, sells, conveys, mortgages, transfers and assigns to Trustee, its successors and assigns, in trust, with power of sale and right of entry and possession as provided below, for the benefit of Beneficiary, all of its present and future fee estate, including all right, title and interest of Trustor in and to the following described property, whether such property is now or hereafter in existence (the "<u>Mortgaged Property</u>"):

(a) the real estate and any interest in the real estate located in Santa Barbara County, California, and described in <u>EXHIBIT A</u> (the "<u>Land</u>"); (b) all buildings, structures, improvements, fixtures, attachments, appliances, equipment, machinery and other articles now or hereafter erected on, affixed or attached to, or located in or on the Land, including all wells, watering and irrigation apparatus, pumps, motors, generators, pipes, center pivot irrigators and sprinklers, windmills, and fences (the "<u>Improvements</u>", together with the Land, the "<u>Real Property</u>"); (c) all easements, rights-of-way and rights appurtenant to the Land or used in connection with the Land or as a means of access thereto; (d) the ground water on, under, pumped from or otherwise available to the Real Property or any drainage, retention, ditch, canal, reservoir, or other water rights, whether as a result of overlying groundwater rights, contractual rights, or otherwise and whether riparian, appropriative, or otherwise; the right to remove or extract any such ground water including any permits, rights or licenses granted by any governmental authority and any rights granted or created by any easement, covenant, agreement or contract with any person; and any rights to which the Real Property or Trustor is entitled with respect to surface water, whether such rights are appropriative, riparian, prescriptive or otherwise and whether or not pursuant to historical use, contractual agreement, permit or other governmental authorization; any water right, water allocation for water not yet delivered, distribution right, delivery right, any proscriptive, contractual, easement or other rights necessary or convenient to convey any water to the Real Property, water storage right, or other water-related entitlement appurtenant to or otherwise applicable to the Real Property by virtue of the Real Property being situated within the boundaries of any governmental water district irrigation district or other local agency or within the boundaries of any private water company, mutual water company, or other non-governmental entity (collectively, "<u>Water Rights</u>"); (e) all other tenements, hereditaments and appurtenances to the Land; (f) minerals, oil, gas, coal, metallic ores, other minerals and any other hydrocarbon substances, minerals, mineral interests, royalties, overriding royalties, production payments, net profit interests and other interests and other interests and estates in, under and on the Land and other oil, gas, coal, metallic ores and any other mineral interests with which any of the foregoing interests or estates are pooled or unitized, including surface damage awards or settlements (the "<u>Mineral Rights</u>"); (g) timber now or hereafter standing or cut; (h) leases, subleases, licenses, occupancy agreements, concessions and other agreements, granting a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Real Property (collectively, the "<u>Leases</u>"); (i) all utility contracts, maintenance agreements, management agreements, service contracts and other agreements directly related to

Case 9:20-bk-11072-DS    Doc 162-1    Filed 03/15/21    Entered 03/15/21 16:51:55    Desc
            Volume(s) two    Page 5 of 30
Case 9:20-bk-11072-DS    Claim 19 Part 2    Filed 12/17/20    Desc Exhibit Settlement and
                        Release Agreement    Page 33 of 80

the operation and maintenance of the Real Property; (j) all bushes, groves, trees, plants, crops, vines or other plantings, upon or under the Land ("Plantings"); (k) any shares, or any rights under such shares, of any private water company, mutual water company, or other non-governmental entity pursuant to which Trustor or the Real Property may receive water (collectively, the "Water Stock"); (l) working drawings, instructional manuals, and rights in processes directly related to the operation of the Real Property; (m) other tangible personal property of every kind and description, whether stored on the Land or elsewhere, including all goods, materials, supplies, tools, books, records, chattels, furniture, machinery and equipment or which is in all cases (i) directly related to the operation of the Real Property or acquired in connection with any construction or maintenance of the Land or the Improvements (ii) affixed or installed, or to be affixed or installed, in any manner on the Land or the Improvements; (n) all permits and licenses relating or pertaining to the use or enjoyment of the Real Property; (o) proceeds of and any unearned premiums on any insurance policies covering the Real Property, including the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Real Property (the "Insurance Claims"); (p) all awards made for the taking by condemnation or the power of eminent domain, or by any proceeding or purchase in lieu thereof, of the whole or any part of the Real Property (the "Condemnation Awards"); (q) money or other personal property of Trustor in addition to the foregoing deposited with or otherwise in Beneficiary's possession; (r) all accounts, deposit accounts, and general intangibles, including payment intangibles; (s) the right, in the name and on behalf of Trustor, upon notice to Trustor, to appear in and defend any action or proceeding brought with respect to the Real Property and to commence any action or proceeding to protect the interest of Beneficiary in the Real Property; and (t) substitutions, replacements, additions, accessions and proceeds for or to any of the foregoing, and all books, records and files relating to any of the foregoing, including, without limitation, computer readable memory and data and any computer software or hardware reasonably necessary to access and process such memory and data.

TO HAVE AND TO HOLD the Mortgaged Property unto Trustee forever and Trustor does hereby bind itself, its successors and assigns to WARRANT AND FOREVER DEFEND the title to the Mortgaged Property unto Trustee against every person whomsoever lawfully claiming or to claim the same or any part thereof or against parties claiming by, through, or under Trustor and not otherwise.

1.2    Obligations Secured.  This Deed of Trust secures all of Trustor's obligations owing to Beneficiary from time to time under the Guaranty (the "Guaranteed Obligations"), including, but not limited to:

(a)    the payment and performance of Customer's indebtedness under that certain Settlement and Release Agreement among Beneficiary, Trustor and Customer (the "Settlement Agreement");

(a)    any and all amounts, debts, liabilities, and obligations of every type and description, which Customer may now or at any time owe to Beneficiary, whether now existing or hereafter arising, direct or indirect, due or to become due, absolute or contingent, arising from, the Settlement Agreement, or related security document;

Case 9:20-bk-11072-DS    Doc 162-1    Filed 03/15/21    Entered 03/15/21 16:51:55    Desc
Volume(s) two    Page 6 of 30
Case 9:20-bk-11072-DS    Claim 19 Part 2    Filed 12/17/20    Desc Exhibit Settlement and
Release Agreement    Page 34 of 80

   (b)  any and all modifications, extensions and renewals of the indebtedness secured hereby; and

   (c)  the payment of all sums advanced or paid out by Beneficiary under any provision of this Deed of Trust or to protect the security of this Deed of Trust.

## ARTICLE II
## COVENANTS OF TRUSTOR

   To protect the security of this Deed of Trust, Trustor covenants for the benefit of Beneficiary as follows:

   II.1  <u>Payment of Indebtedness</u>.  Trustor shall pay and perform or cause Customer to pay and perform, all Guaranteed Obligations that are secured by this Deed of Trust in accordance with the terms of any of the agreements evidencing such Guaranteed Obligations.

   II.2  <u>Insurance</u>.  Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a fair value basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Beneficiary.  Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Beneficiary may request with Trustee and Beneficiary being named as additional insureds in such liability insurance policies.  Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Beneficiary may reasonably require.  Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Beneficiary and issued by a company or companies reasonably acceptable to Beneficiary.  Trustor, upon request of Beneficiary, will deliver to Beneficiary from time to time the policies or certificates of insurance in form satisfactory to Beneficiary, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Beneficiary.  Each insurance policy also shall include an endorsement providing that coverage in favor of Beneficiary will not be impaired in any way by any act, omission or default of Trustor or any other person.  Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Beneficiary that the Real Property is located in a special flood hazard area, for the full unpaid principal balance of the Guaranteed Obligations and any prior liens on the property securing the Guaranteed Obligations, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Beneficiary, and to maintain such insurance for the term of the Guaranty.

   Unless Trustor provides Beneficiary with evidence of the insurance coverage as required by the Deed of Trust, Beneficiary may purchase insurance at Trustor's expense to protect Beneficiary's interest.  This insurance may, but need not, also protect Trustor's interest.  If the collateral becomes damaged, the coverage Beneficiary purchases may not pay any claim Trustor makes or any claim made against Trustor.  Trustor may later cancel this coverage by providing evidence that Trustor has obtained property coverage elsewhere.  Trustor is responsible for the cost of any insurance purchased by Beneficiary.  The cost of this insurance may be added to

2485269v2 / 21397.0002      4

Trustor or Customer's obligations owed to Beneficiary. If the cost is added to Trustor or Customer's obligations, the interest rate on the Guaranteed Obligations will apply to this added amount. The effective date of coverage may be the date Trustor failed to provide proof of coverage.

II.3    Payment of Taxes; Claims. Trustor shall pay prior to delinquency all taxes and assessments which are or may become a lien on the Mortgaged Property or which are assessed against the Mortgaged Property or its rents, royalties, profits and income. Trustor shall pay when due all lawful claims and demands of mechanics, materialmen, laborers and others for any work performed or materials delivered for the Mortgaged Property.

II.4    Waste; Maintenance and Repair. Trustor shall not commit any waste on the Mortgaged Property or take any actions that result in the insurance carried on the Mortgaged Property being cancelled. No Improvements may be removed, demolished or altered without the prior written consent of Beneficiary. Trustor shall keep the Mortgaged Property in good condition and repair; operate the Mortgaged Property, whether improved pastures, orchards, grazing, timber, or crop lands, in a good and husbandman like manner in accordance with accepted principles of sound agricultural and forestry practices; take all reasonable precautions to control wind and water erosion; fertilize improved pastures, if any, where necessary to maintain a good stand of desirable grasses; protect orchards and timber, if any, by reasonable precautions against loss or damage by fire including the maintenance of appropriate fire breaks; and neither to remove nor permit the removal of any timber, buildings, oil, gas, mineral, stone, rock, clay, fertilizer, gravel or top soil without the prior written consent of Beneficiary; complete appropriation and all other requirements, if any, necessary to obtain the issuance of any license or water permit issued to Trustor, and take all other steps required or advisable for purposes of perfecting and maintaining in good status all other Water Rights.

II.5    Change in Use; Compliance with Laws. Without the prior written consent of Beneficiary, Trustor shall not seek, make or consent to any change in the zoning or conditions of use of the Land which impair the ability of Trustor to construct Improvements on the Land. Trustor shall comply with and make all payments required under the provisions of any covenants, conditions or restrictions that are recorded against title to the Mortgaged Property. Trustor shall comply with all existing and future requirements of all governmental authorities having jurisdiction over the Mortgaged Property.

II.6    Actions Affecting Beneficiary's Security. Trustor shall, at its own expense, appear in and defend any action or proceeding (i) that might adversely affect Beneficiary's lien on the Mortgaged Property, or (ii) that might adversely affect the priority of the security interest of Beneficiary, or (iii) that might adversely affect Beneficiary's right to enforce its security or (iv) that would adversely affect Trustor's right, title or interest in or to the Mortgaged Property. If there is an Event of Default under this Deed of Trust, then Beneficiary and/or Trustee may, at their option, make any appearances, disburse any sums and take any actions as may be necessary or desirable to protect or enforce the security of this Deed of Trust or to remedy the failure of Trustor to perform its covenants (without, however, waiving any default of Trustor). Trustor agrees to pay all costs and expenses of Beneficiary and Trustee thus incurred (including but not limited to reasonable fees and disbursements of counsel). Any sums disbursed or advanced by Beneficiary or Trustee pursuant to this Section 2.6 will be additional indebtedness of Trustor

Case 9:20-bk-11072-DS    Doc 162-1    Filed 03/15/21    Entered 03/15/21 16:51:55    Desc
Case 9:20-bk-11072-DS    Claim 19 Part 2    Filed 12/17/20    Desc Exhibit Settlement and
Volume(s) two    Page 8 of 30
Release Agreement    Page 36 of 80

secured by this Deed of Trust, and will be payable by Trustor upon demand. Any such sums so disbursed or advanced by Beneficiary pursuant to this Section 2.6 will bear interest at a default rate equal to 7%,] provided that the interest rate applicable to such sums so disbursed or advanced by Beneficiary will not bear interest at a rate that would exceed the maximum rate permitted to be charged by Trustee under applicable law. This paragraph will not be construed to require Beneficiary or Trustee to incur any expenses, make any appearances, or take any actions.

II.7    Prohibited Transfers. Trustor shall not make or permit any Prohibited Transfer. Upon any Prohibited Transfer, Beneficiary may declare all Guaranteed Obligations to be due and payable immediately. "Prohibited Transfer" means: (a) any sale, contract to sell, conveyance, encumbrance, pledge, mortgage, lease of the Property to or for the benefit of a Person not the original Trustor under this instrument, or other transfer of all or any material part of the Property or any interest in it, including any transfer of Mineral Rights, Water Rights, or Water Stock, whether voluntary, involuntary, by operation of law or otherwise; (b) if Trustor is a corporation, any transfer or transfers of shares of the voting power or the direct or indirect beneficial ownership of Trustor; (c) if Trustor is a partnership, withdrawal or removal of any general partner, dissolution of the partnership under applicable law, or any transfer or transfers of the partnership interests; (d) if Trustor is a limited liability company, withdrawal or removal of any managing member, termination of the limited liability company or any transfer or transfers of the voting power or the ownership of the economic interest in the Trustor; or (e) if Trustor is a trust, withdrawal or removal of any trustee or revocation of the trust.

**ARTICLE III**
**CASUALTY AND CONDEMNATION**

III.1    Trustor's Obligation to Restore. If the Improvements shall be damaged or destroyed, in whole or in part, by fire or other casualty and the cost to repair such damage or destruction exceeds $5,000.00 (a "Casualty"), Trustor shall give prompt notice thereof to Beneficiary. Following the occurrence of a Casualty, regardless of whether insurance proceeds are available, unless otherwise agreed to by Beneficiary, Trustor shall promptly proceed to restore, repair, replace or rebuild the Improvements to be of substantially the same character as prior to such damage or destruction, all to be effected in accordance with applicable laws. The expenses incurred by Beneficiary in the adjustment and collection of insurance proceeds shall become part of the amounts owing in connection with the Guaranteed Obligations and shall be secured by this Deed of Trust and shall be reimbursed to Beneficiary upon demand.

III.2    Insured Losses; Condemnation Proceeds. In case of loss or damages covered by any insurance policy required to be maintained by Trustor or a condemnation or taking under power of eminent domain of any portion of or interest in the Real Property, the following provisions shall apply:

III.2.1    Settlement by Trustor. If there is a Casualty and no Event of Default exists, then Trustor may settle and adjust any claim without the consent of Beneficiary and agree with the insurance company or companies or the condemning authority on the amount to be paid upon the loss; provided that such adjustment is carried out in a competent and timely manner. In

Case 9:20-bk-11072-DS    Doc 162-1    Filed 03/15/21    Entered 03/15/21 16:51:55    Desc
Case 9:20-bk-11072-DS    Claim 1d Part 2    Filed 12/17/20    Desc Exhibit Settlement and
Volume(s) two    Page 9 of 30
Release Agreement    Page 37 of 80

such case, Trustor is hereby authorized to collect and retain any such condemnation or insurance proceeds.

III.2.2 <u>Settlement by Beneficiary</u>. If an Event of Default then exists and is continuing, then, subject to the duly perfected rights of Senior Secured Creditors, Beneficiary may settle and adjust any claim without the consent of Trustor and agree with the insurance company or companies or the condemning authority on the amount to be paid on the loss and the proceeds of any such policy shall be due and payable solely to Beneficiary and held in escrow by Beneficiary in accordance with the terms of this Deed of Trust.

III.2.3 <u>Application of Proceeds Absent Rebuilding</u>. Except as provided in <u>Section 3.2.1</u>, the proceeds collected upon any Casualty or condemnation shall, at the option of Beneficiary in its sole discretion, be applied to the payment of the Guaranteed Obligations or applied to reimburse Trustor for the cost of restoring, repairing, replacing or rebuilding the Improvements or part thereof subject to the Casualty or condemnation, in the manner set forth below. Any such application to the payment of the Guaranteed Obligations shall be applied to the installments of principal in the inverse order of maturity.

I.1.2 <u>Conditions to Disbursement of Proceeds to Reimburse Trustor</u>. If Trustor is entitled to reimbursement out of insurance or condemnation proceeds held by Beneficiary, then such proceeds shall be disbursed from time to time upon Beneficiary being furnished with (a) evidence satisfactory to it of the estimated cost of completion of the restoration, repair, replacement and rebuilding, (b) assurances satisfactory to Beneficiary that such funds are available, sufficient in addition to the insurance or condemnation proceeds to complete the proposed restoration, repair, replacement and rebuilding, and (c) such architect's certificates, conditional waivers of lien (subject only to payment), contractor's sworn statements, title insurance endorsements, bonds, plats of survey and such other evidences of cost, payment and performance as Beneficiary may reasonably require and approve. Beneficiary may, in any event, require that all plans and specifications for such restoration, repair, replacement and rebuilding be submitted to and approved by Beneficiary prior to commencement of work. No payment made prior to the final completion of the restoration, repair, replacement and rebuilding shall exceed 90% of the value of the work performed from time to time. If Trustor is required to advance funds for such restoration work as set forth above, then Trustor shall have advanced all such funds prior to disbursement by Beneficiary to Trustor of such insurance or condemnation proceeds. Beneficiary shall not be obligated to disburse insurance or condemnation proceeds to Trustor until Trustor shall provide reasonable evidence to Beneficiary that the undisbursed balance of such insurance or condemnation proceeds remaining in the hands of Beneficiary, together with funds deposited for that purpose or irrevocably committed to the satisfaction of Beneficiary by or on behalf of Trustor for that purpose, shall be at least sufficient in the reasonable judgment of Beneficiary to pay for the cost of completion of the restoration, repair, replacement or rebuilding, free and clear of all liens or claims for lien. Any surplus which may remain out of insurance or condemnation proceeds held by Beneficiary after payment of such costs of restoration, repair, replacement or rebuilding shall be paid to any party entitled thereto provided no Event of Default then exists.

## ARTICLE IV
## ASSIGNMENT OF LEASES AND RENTS

Case 9:20-bk-11072-DS    Doc 162-1    Filed 03/15/21    Entered 03/15/21 16:51:55    Desc
Volume(s) two    Page 10 of 30
Case 9:20-bk-11072-DS    Claim 19 Part 2    Filed 12/17/20    Desc Exhibit Settlement and
Release Agreement    Page 38 of 80

IV.1    Assignment. As additional security for the payment and performance by Trustor of the Guaranteed Obligations, and subject to the duly perfected rights of any senior secured creditors, Trustor hereby absolutely, presently, unconditionally and irrevocably assigns to Beneficiary all of the existing and future leases, licenses and other use or occupancy agreements and all existing and future rents, royalties, income, profits and other benefits derived from or produced by the Mortgaged Property, including but not limited to, any monies, proceeds, damages, judgments or payments in lieu thereof, received by or due to Trustor occasioned by any mineral or geothermal exploration, wind energy or drilling activity on or under the Real Property, all prepaid rents, security deposits and other supporting obligations.

IV.2    Revocable License. Subject to the duly perfected rights of any senior secured creditors, Beneficiary hereby grants to Trustor a license to collect and receive all rents, royalties, income and profits produced by or related to the use and occupancy of the Mortgaged Property. Upon the occurrence and during the continuance of an Event of Default, Beneficiary may, in its discretion, deliver written notice to Trustor and terminate such license and, subject to the duly perfected rights of any senior secured creditors, Beneficiary may thereafter collect the rents, royalties, income and profits itself or by an agent or receiver. If and when an Event of Default is cured by Trustor, Beneficiary shall again grant to Trustor a license to collect and receive all rents, royalties, income and profits related to the use and occupancy of the Mortgaged Property. No action taken by Beneficiary to collect any rents, royalties, income or profits will make Beneficiary a "mortgagee-in-possession" of the Mortgaged Property, unless Beneficiary personally or by agent enters into actual possession of the Mortgaged Property. Possession by a court appointed receiver will not be considered possession by Beneficiary. All rents, royalties, income and profits collected by Beneficiary or a receiver will be applied to pay all expenses of collection, and to the payment of all costs of operation and management of the Mortgaged Property, and to the payment of the Guaranteed Obligations in whatever order Beneficiary directs in its absolute discretion and without regard to the adequacy of its security. Beneficiary's right to a receiver shall be absolute and unconditional, and a receiver may be obtained in an independent action, regardless of whether Beneficiary seeks any relief other than the appointment of a receiver; Trustor expressly waives any express or implied legal requirement that might otherwise require the initiation or pendency of an action or proceeding seeking other relief as a condition to the appointment of a receiver. The receiver may be appointed without regard to the adequacy of any security for the Guaranteed Obligations and Trustor shall immediately surrender possession of the Mortgaged Property to the receiver upon his appointment.

IV.3    Leases. All new leases of the Mortgaged Property shall be subject to approval by the Beneficiary which approval will not be unreasonably withheld. All leases of the Mortgaged Property shall be at market terms. Trustor shall provide Beneficiary, promptly after execution thereof, copies of any and all new tenant leases as to any portion of the Mortgaged Property.

## ARTICLE V
## OBLIGATIONS UNCONDITIONAL

V.1    Arrangements with Customer or Customer's Indebtedness. Trustor authorizes Beneficiary to perform any of the following acts at any time, all without notice to Trustor and without affecting the rights of Beneficiary or the obligations of Trustor under this Deed of Trust:

(i) alter any terms of the Guaranteed Obligations, including renewing, compromising, extending or accelerating, or otherwise changing the time for payment of, or increasing or decreasing the rate of interest on, the Guaranteed Obligations; (ii) take and hold security for the Guaranteed Obligations, accept additional or substituted security for the Guaranteed Obligations, and subordinate, exchange, enforce, waive, release, compromise, fail to perfect, sell or otherwise dispose of any such security; (iii) apply any security now or later held for the Guaranteed Obligations in any order that Beneficiary may choose, and may direct the order and manner of any sale of all or any part of it and bid at any such sale; (iv) release Customer of its liability for all or any portion of the Guaranteed Obligations; and (v) substitute, add or release any one or more guarantors or endorsers of the Guaranteed Obligations.

V.2    Waivers.  Trustor waives: (i) any right to require Beneficiary to proceed against Customer, proceed against or exhaust any security held from Customer, or pursue any other remedy in Beneficiary's power to pursue; (ii) any defense based on any legal disability of Customer, any discharge or limitation of the liability of Customer to Beneficiary, whether consensual or arising by operation of law or any bankruptcy, reorganization, receivership, insolvency, or debtorrelief proceeding, or from any other cause, or any claim that the obligations of Trustor exceed or are more burdensome than those of Customer; (iii) all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance of this Deed of Trust and of the existence, creation, or incurring of new or additional indebtedness of Customer, and demands and notices of every kind; (iv) any defense based on or arising out of any defense that Customer may have to the payment or performance of the Guaranteed Obligations; and (v) until the Guaranteed Obligations have been paid and performed in full, all rights of subrogation, reimbursement, indemnification and contribution (contractual, statutory or otherwise), including any claim or right of subrogation under the Bankruptcy Code (Title 11 of the U.S. Code) or any successor statute, all rights to enforce any remedy that Beneficiary may have against Customer, and all rights to participate in any security now or later to be held by Beneficiary for the Guaranteed Obligations.

V.3    Further Waivers.  Trustor waives all rights and defenses that Trustor may have because the Guaranteed Obligations may be secured by real property other than the Real Property hereby encumbered.  This means, among other things: (i) Beneficiary may collect from Trustor (including enforcing this Deed of Trust against Trustor) without first foreclosing on any other real or personal property collateral securing the Guaranteed Obligations; and (ii) if Beneficiary forecloses on any real property collateral securing the Guaranteed Obligations: (A) the amount of the Guaranteed Obligations may be reduced only by the price for which such collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, and (B) Beneficiary may collect from Trustor (including enforcing this Deed of Trust against Trustor) even if Beneficiary, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from Customer.  This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because the Guaranteed Obligations may be secured by real property other than the Real Property.

V.4    Determination of Deficiency.  Trustor waives any right or defense it may have at law or equity, to a fair market value hearing or action to determine a deficiency judgment after a foreclosure of any real property other than the Real Property hereby encumbered.

2485269v2 / 21397.0002                                  9

Case 9:20-bk-11072-DS    Doc 162-1    Filed 03/15/21    Entered 03/15/21 16:51:55    Desc
Volume(s) two    Page 12 of 30
Case 9:20-bk-11072-DS    Claim 19 Part 2    Filed 12/17/20    Desc Exhibit Settlement and
Release Agreement    Page 40 of 80

V.5    Customer Information. Trustor is solely responsible for keeping informed of the financial condition and business operations of Customer and all other circumstances affecting the ability of Customer to pay and perform Customer's obligations to Beneficiary, and agrees that Beneficiary will have no duty to disclose to Trustor any information which Beneficiary may receive about the financial condition, business operations, or any other circumstances bearing on the ability of Customer to perform.

V.6    Waivers Not Limited. No provision or waiver in this Deed of Trust shall be construed as limiting the generality of any other provision or waiver contained in this Deed of Trust or the Guaranty.

## ARTICLE VI
## PERSONAL PROPERTY SECURITY PROVISIONS

VI.1    Security Interest. This Deed of Trust is also intended to encumber and create a security interest in, and Trustor hereby grants to Beneficiary a security interest in, all portions of the Mortgaged Property constituting personal property and all other fixtures, chattel paper, deposit accounts, equipment, goods, inventory, contract rights, documents, instruments, investment property, general intangibles, and all other personal property of every type or description owned by Trustor and used in connection with the Real Property, all renewals, replacements, additions to, or substitutions of the foregoing and the proceeds thereof, whether or not the same shall be attached or related to the Real Property in any manner (all such personal property being referred to collectively as the "Personal Property Collateral"). All of the Personal Property Collateral shall be owned by Trustor and no leasing or installment sales or other financing or title retention agreement in connection therewith shall be permitted without the prior written approval of Beneficiary. Trustor shall, from time to time upon the request of Beneficiary, supply Beneficiary with a current inventory of all of the Personal Property Collateral in which Beneficiary is granted a security interest hereunder, in such detail as Beneficiary may reasonably require. Trustor shall promptly replace all of the Personal Property Collateral when worn or obsolete with an article comparable to the worn out or obsolete Personal Property Collateral when new and will not, without the prior written consent of Beneficiary, remove from the Property any of the Personal Property Collateral subject to this Deed of Trust except such as is replaced by an article of equal suitability and value as above provided, owned by Trustor free and clear of any lien or security interest except that created by this Deed of Trust.

VI.2    Security Agreement. This Deed of Trust constitutes a security agreement between Trustor and Beneficiary with respect to the Personal Property Collateral in which Beneficiary is granted a security interest hereunder, and, cumulative of all other rights and remedies of Beneficiary hereunder, Beneficiary shall have all of the rights and remedies of a secured party under the California Uniform Commercial Code (the "UCC"). Trustor hereby authorizes Beneficiary to prepare and file with the appropriate filing officer or office financing statements, amendments thereto, and continuation statements, and to file any such financing statement, amendment thereto or continuation statement electronically in all jurisdictions the Beneficiary deems necessary or desirable in order to perfect or continue the perfection of the lien or security interest created hereby. Such financing statements may describe the collateral as "all personal property" or "all assets" or similar language. Trustor shall have possession of the Personal Property Collateral, except where Beneficiary chooses to perfect its security interest by

Case 9:20-bk-11072-DS    Doc 162-1    Filed 03/15/21    Entered 03/15/21 16:51:55    Desc
Volume(s) two    Page 13 of 30
Case 9:20-bk-11072-DS    Claim 19 Part 2    Filed 12/17/20    Desc Exhibit Settlement and
Release Agreement    Page 41 of 80

possession in addition to the filing of a financing statement. Where Personal Property Collateral is in the possession of a third party, Trustor will join with Beneficiary in notifying such third party of Beneficiary's security interest and obtaining an acknowledgment from the third party that it is holding the Personal Property Collateral for the benefit of Beneficiary. Trustor agrees to furnish Beneficiary in writing with notice of any change in the name, organizational structure, or principal place of business or mailing address of Trustor thirty (30) days prior to the effective date of any such change.

VI.3    UCC Remedies. Upon the occurrence and during the continuance of any Event of Default hereunder, subject to the duly perfected rights of any senior secured creditors,. Beneficiary shall have the right to cause any of the Personal Property Collateral to be sold at any one or more public or private sales as permitted by applicable law, and Beneficiary shall further have all other rights and remedies, whether at law, in equity, or by statute, as are available to secured creditors under applicable law. Any such disposition may be conducted by an employee or agent of Beneficiary or Trustee. Any person, including Trustor and Beneficiary, shall be eligible to purchase any part or all of such property at any such disposition. Expenses of retaking, holding, preparing for sale, selling or the like shall be borne by Trustor and shall include Beneficiary's and Trustee's reasonable attorneys' fees and legal expenses. Subject to the duly perfected rights of any senior secured creditors, Trustor, upon demand of Beneficiary, shall assemble such personal property and make it available to Beneficiary at the Real Property, a place which is hereby deemed to be reasonably convenient to Beneficiary and Trustor. Beneficiary shall give Trustor at least ten (10) days' prior written notice of the time and place of any public sale or other disposition of such property or of the time of or after which any private sale or any other intended disposition is to be made, and if such notice is sent to Trustor, as the same is provided for the mailing of notices herein, it is hereby deemed that such notice shall be and is reasonable notice to Trustor.

VI.4    Parties. The name and principal place of business of Trustor, as "Debtor", and Beneficiary, as "Secured Party", under the UCC are as set forth in the first paragraph of this Deed of Trust.

## ARTICLE VII
## EVENTS OF DEFAULT

An "Event of Default" hereunder shall mean any of the following: (a) failure of Trustor to pay any of the Guaranteed Obligations when due; (b) a Prohibited Transfer; (c) any representation in this Deed of Trust is materially incorrect or materially misleading when made; (d) for more than ten days after notice from Beneficiary, Trustor is in default under any term, covenant or condition of this Deed of Trust not previously described in this Article VII which can be cured by the payment of a sum of money; or (e) for 30 days after notice from Beneficiary, Trustor is in default under any term, covenant or condition of this Deed of Trust not previously described in this Article VII; provided that if (i) it is reasonably certain that the default can be cured by Trustor within that 30 day period and (ii) Trustor has commenced curing that default within that 30 day period and thereafter diligently and expeditiously proceeds to cure that default then that 30 day period shall be extended for so long as reasonably required by Trustor in the exercise of due diligence to cure that default, up to a maximum of 90 days after the notice to Trustor of the Event of Default.

Case 9:20-bk-11072-DS    Doc 162-1    Filed 03/15/21    Entered 03/15/21 16:51:55    Desc
Case 9:20-bk-11072-DS    Claim 19 Part 2    Filed 12/17/20    Desc Exhibit Settlement and
Volume(s) two    Page 14 of 30
Release Agreement    Page 42 of 80

## ARTICLE VIII
## REMEDIES

VIII.1    Remedies.  Upon the occurrence of any Event of Default, Beneficiary may, at its option, and without notice to or demand upon Trustor:

VIII.1.1    Declare any or all Guaranteed Obligations to be due and payable immediately;

VIII.1.2    Subject to the duly perfected rights of any senior secured creditors, Enter onto the Mortgaged Property, in person or by agent or by court-appointed receiver, and take any and all steps which may be desirable in Beneficiary's judgment to complete any unfinished construction and to manage and operate the Mortgaged Property and to collect any and all rents, issues and profits of the Mortgaged Property, and Beneficiary may apply any rents, royalties, income or profits collected against the indebtedness secured by this Deed of Trust without in any way curing or waiving any default of Trustor;

I.1.3    Bring a court action to foreclose this Deed of Trust under any applicable provision of law or to enforce its provisions or any of the Guaranteed Obligations secured by this Deed of Trust;

VIII.1.3    Cause any or all of the Mortgaged Property to be sold under the power of sale granted by this Deed of Trust in any manner permitted by applicable law; and/or

VIII.1.4    Exercise any other right or remedy available under law or in equity.

VIII.2    Power of Sale.  For any sale under the power of sale granted by this Deed of Trust, Beneficiary or Trustee must record and give all notices required by law and then, upon the expiration of such time as is required by law, and subject to the duly perfected rights of any senior secured creditors, Trustee may sell the Mortgaged Property upon any terms and conditions specified by Beneficiary and permitted by applicable law.  Trustee may postpone any sale by public announcement at the time and place noticed for the sale.  If the Mortgaged Property consists of several lots, parcels or items of property, Beneficiary may, in its sole discretion: (a) designate the order in which such lots, parcels or items shall be offered for sale or sold, or (b) elect to sell such lots, parcels or items through a single sale, or through two or more successive sales or in any other manner Beneficiary deems in its best interest.  Any person, including Trustor, Trustee or Beneficiary, may purchase at any sale hereunder, and Beneficiary shall have the right to purchase at any sale hereunder by crediting upon the bid price the amount of all or any part of the indebtedness hereby secured.  Should Beneficiary desire that more than one sale or other disposition of the Mortgaged Property be conducted, Beneficiary may, at its option, cause the same to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as Beneficiary may deem to be in its best interests, and no such sale shall terminate or otherwise affect the lien of this Deed of Trust on any part of the Mortgaged Property not sold until all Guaranteed Obligations secured hereby have been fully paid.  In the event Beneficiary elects to dispose of the Mortgaged Property through more than one sale, Trustor agrees to pay the costs and expenses of each such sale and of any judicial

proceedings wherein the same may be made, including reasonable compensation to Trustee and Beneficiary, their agents and counsel, and to pay all expenses, liabilities and advances made or incurred by Trustee with regard to such sale or sales, together with interest on all such advances made by Trustee at the maximum rate permitted by law to be charged by Trustee. Upon any sale hereunder, Trustee shall execute and deliver to the purchaser or purchasers a deed or deeds conveying the property so sold, but without any covenant or warranty whatsoever, express or implied, whereupon such purchaser or purchasers shall be let into immediate possession; and the recitals in any such deed or deeds of fact, such as default, the giving of notice of default and notice of sale, and other facts affecting the regularity or validity of such sale or disposition shall be conclusive proof of the truth of such facts and any such deed or deeds shall be conclusive against all persons as to such facts recited therein.

VIII.3 <u>Application of Proceeds</u>. Subject to the duly perfected rights of any senior secured creditors, the proceeds of any sale under this Deed of Trust will be applied to the following in any order Beneficiary chooses:

VIII.3.1    Payment of the costs and expenses of the sale, including but not limited to Trustee's fees, legal fees and disbursements, title charges and transfer taxes, and payment of all expenses, liabilities and advances of Trustee, together with interest on all advances made by Trustee at the maximum rate permitted to be charged by Trustee under applicable law.

VIII.3.2    Payment of all sums expended by Beneficiary under the terms of this Deed of Trust and not yet repaid, together with interest on such sums at the rate of 7.00% per annum.

VIII.3.3    Payment of the Guaranteed Obligations in any order that Beneficiary chooses.

VIII.3.4    The remainder, if any, to the person or persons legally entitled to it.

VIII.4 <u>Waivers by Trustor</u>. Trustor waives all rights to direct the order in which any of the Mortgaged Property will be sold in the event of any sale under this Deed of Trust, and also any right to have any of the Mortgaged Property marshaled upon any sale.

VIII.5 <u>No Waiver by Beneficiary</u>. All remedies contained in this Deed of Trust are cumulative, and Beneficiary also has all other remedies provided by law or in any other agreement between Trustor and Beneficiary. No delay or failure by Beneficiary to exercise any right or remedy under this Deed of Trust will be construed to be a waiver of that right or remedy of any default by Trustor. Beneficiary may exercise any one or more of its rights and remedies at its option without regard to the adequacy of its security.

VIII.6 <u>Enforcement Costs</u>. Trustor will pay all of Beneficiary's and Trustee's expenses incurred in any efforts to enforce any terms of this Deed of Trust, whether or not any lawsuit is filed, including but not limited to reasonable legal fees and disbursements, foreclosure costs and title charges.

2485269v2 / 21397.0002                    13

## ARTICLE IX
## MISCELLANEOUS

IX.1  <u>Fixture Filing</u>.  This Deed of Trust constitutes a financing statement filed as a Fixture Filing in the Official Public Records of real property of the county in which the Mortgaged Property is located with respect to any and all fixtures included within the term "Mortgaged Property" as used herein and with respect to any goods or other personal property that may now be or hereafter become such fixtures.

IX.2  <u>Invalidity</u>.  The invalidity or unenforceability of any one or more provisions of this Deed of Trust will not affect any other provisions of this Deed of Trust.

IX.3  <u>Statement of Status</u>.  Trustor agrees to pay Beneficiary a reasonable charge, not to exceed the maximum allowed by law, for giving any statement of the status of the obligations secured by this Deed of Trust.

IX.4  <u>Notices</u>.  The service of any notice of default or notice of sale under this Deed of Trust as required by law will, if mailed, be effective on the date of mailing.

IX.5  <u>Actions by Beneficiary</u>.  Without affecting Trustor's liability for the payment of any of the indebtedness secured by this Deed of Trust, Beneficiary may from time to time and without notice to Trustor (a) release any person liable for the payment of that indebtedness, (b) accept additional real or personal property of any kind as security, or alter, substitute or release any property securing that indebtedness, or (c) cause Trustee to consent to the making of any map or plot of the Mortgaged Property, or to reconvey any part of the Mortgaged Property, or to join in granting any easement or creating any restriction on the Mortgaged Property, or to join in any subordination or other agreement affecting this Deed of Trust.

IX.6  **<u>Indemnification</u>. Trustor shall indemnify Trustee and Beneficiary against and shall hold them harmless from all losses, damages, liabilities, claims, causes of action, judgments, court costs, attorneys' fees and claims therefor together with all other legal expenses, costs of evidence of title, costs of evidence of value, and other costs and expenses which either Trustee or Beneficiary may suffer or incur:  (1.) In performing any act required or permitted by this deed of trust or by law or any other agreement between Beneficiary and Trustor or between Beneficiary and Valley Farm Supply, Inc., Peter J. Compton, any successor of the foregoing, or any person affiliated with the foregoing-listed individuals and entities ;  (2.) Because of any failure of Trustor to pay or perform any obligation owed by Trustor to Beneficiary; (3.) Because of any alleged obligation of or undertaking by Beneficiary to perform or discharge any of the representations, warranties, conditions, covenants, or other obligations in any document or agreement relating to the property.  This agreement by Trustor to indemnify, defend, and hold harmless Beneficiary survives the release and cancellation of any or all of the other obligations by and between Beneficiary or Trustor as well as the full or partial release and/or reconveyance of this Deed of Trust.**

IX.7  <u>Reconveyance</u>.  Upon the payment in full of all Guaranteed Obligations, Beneficiary agrees to request Trustee to reconvey the Mortgaged Property, and upon payment of

2485269v2 / 21397.0002                    14

Case 9:20-bk-11072-DS    Doc 162-1    Filed 03/15/21    Entered 03/15/21 16:51:55    Desc
Case 9:20-bk-11072-DS    Claim(s) two    Filed 17 of 30    Desc Exhibit Settlement and
Volume(s) two    Page 17 of 30
Release Agreement    Page 45 of 80

its fees and all other sums owing to it under this Deed of Trust, Trustee will reconvey the Mortgaged Property without warranty to the person or persons legally entitled to it. Such person or persons must pay all costs of recordation. The recitals in the reconveyance of any facts will be conclusive on all persons. The grantee in the reconveyance may be described as "the person or persons legally entitled thereto." Trustee and Beneficiary will have no duty to determine the rights of persons claiming to be rightful grantees of any reconveyance of the Property.

IX.8    Statute of Limitations.    Trustor waives all present and future statutes of limitations as a defense to any action to enforce the provisions of this Deed of Trust or to collect any indebtedness secured by this Deed of Trust to the fullest extent permitted by law.

IX.9    Definitions.    The term "Trustor" includes both the original Trustor and any subsequent owner or owners of any of the Mortgaged Property and/or any successor-in-interest of Trustor under the Guaranteed Obligations, and the term "Beneficiary" includes the original Beneficiary and also any future owner or holder, including pledgees and participants, of the Guaranteed Obligations or any interest therein. Whenever the context requires, the singular includes the plural and vice versa and each gender includes each other gender. The headings of the articles of this Deed of Trust are for convenience only and do not limit its provisions.

IX.10    No Waiver.    Beneficiary's consent to any act or omission by Trustor will not be a consent to any other or subsequent act or omission or a waiver of the need for such consent in any future or other instance.

IX.11    Successors and Assigns.    The terms of this Deed of Trust will bind and benefit the heirs, legal representatives, successors and assigns of Trustor and Beneficiary and the successors-in-interest of Trustee.

IX.12    Governing Law.    In all respects, including, without limitation, matters of construction and performance of this Deed of Trust and the obligations arising hereunder, this Deed of Trust shall be governed by, and construed in accordance with, the internal laws of the State of California applicable to contracts made and to be performed in such state without regard to principles of conflicts of laws.

IX.13    The Trustee.    Beneficiary may remove Trustee or any successor Trustee at any time or times and appoint a successor Trustee by: (i) recording a written substitution in the county where the real property covered by this Deed of Trust is located, or in any other manner permitted by law; and (ii) promptly providing written notice of such appointment of the successor Trustee and contact information for the successor Trustee to Trustor. Upon that appointment, all of the powers, rights and authority of Trustee will immediately become vested in its successor. Such substitution and appointment shall be at Beneficiary's expense unless an Event of Default has occurred, in which case, Trustor shall pay such expenses.

**JUDICIAL REFERENCE PROVISION:** **IN THE EVENT ANY LEGAL PROCEEDING IS FILED IN A COURT OF THE STATE OF CALIFORNIA (THE "COURT") BY OR AGAINST ANY PARTY HERETO IN CONNECTION WITH ANY CLAIM AND THE WAIVER SET FORTH IN SECTION 28.2 ABOVE IS NOT ENFORCEABLE IN SUCH PROCEEDING, THE PARTIES HERETO AGREE AS FOLLOWS:**

Case 9:20-bk-11072-DS    Doc 162-1    Filed 03/15/21    Entered 03/15/21 16:51:55    Desc
Volume(s) two    Page 18 of 30
Case 9:20-bk-11072-DS    Claim 19 Part 2    Filed 12/17/20    Desc Exhibit Settlement and
Release Agreement    Page 46 of 80

(a)    WITH THE EXCEPTION OF THE MATTERS SPECIFIED IN SUBCLAUSE (b) BELOW, ANY CLAIM SHALL BE DETERMINED BY A GENERAL REFERENCE PROCEEDING IN ACCORDANCE WITH THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 THROUGH 645.1. THE PARTIES INTEND THIS GENERAL REFERENCE AGREEMENT TO BE SPECIFICALLY ENFORCEABLE. VENUE FOR THE REFERENCE PROCEEDING SHALL BE IN THE COUNTY OF SANTA BARBARA, CALIFORNIA.

(b)    THE FOLLOWING MATTERS SHALL NOT BE SUBJECT TO A GENERAL REFERENCE PROCEEDING: (i) NON-JUDICIAL FORECLOSURE OF ANY SECURITY INTERESTS IN REAL OR PERSONAL PROPERTY, (ii) EXERCISE OF SELF-HELP REMEDIES (INCLUDING SET-OFF OR RECOUPMENT), (iii) APPOINTMENT OF A RECEIVER, AND (iv) TEMPORARY, PROVISIONAL, OR ANCILLARY REMEDIES (INCLUDING WRITS OF ATTACHMENT, WRITS OF POSSESSION, TEMPORARY RESTRAINING ORDERS, OR PRELIMINARY INJUNCTIONS). THIS AMENDMENT DOES NOT LIMIT THE RIGHT OF ANY PARTY TO EXERCISE OR OPPOSE ANY OF THE RIGHTS AND REMEDIES DESCRIBED IN CLAUSES (i) - (iv) AND ANY SUCH EXERCISE OR OPPOSITION DOES NOT WAIVE THE RIGHT OF ANY PARTY TO PARTICIPATE IN A REFERENCE PROCEEDING PURSUANT TO THIS AMENDMENT WITH RESPECT TO ANY OTHER MATTER.

(c)    UPON THE WRITTEN REQUEST OF ANY PARTY, THE PARTIES SHALL SELECT A SINGLE REFEREE, WHO SHALL BE A RETIRED JUDGE OR JUSTICE. IF THE PARTIES DO NOT AGREE UPON A REFEREE WITHIN 10 DAYS OF SUCH WRITTEN REQUEST, THEN, ANY PARTY SHALL HAVE THE RIGHT TO REQUEST THE COURT TO APPOINT A REFEREE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 640(b). THE REFEREE SHALL BE APPOINTED TO SIT WITH ALL OF THE POWERS PROVIDED BY LAW. PENDING APPOINTMENT OF THE REFEREE, THE COURT SHALL HAVE THE POWER TO ISSUE TEMPORARY OR PROVISIONAL REMEDIES.

(d)    EXCEPT AS EXPRESSLY SET FORTH IN THIS AMENDMENT, THE REFEREE SHALL DETERMINE THE MANNER IN WHICH THE REFERENCE PROCEEDING IS CONDUCTED INCLUDING THE TIME AND PLACE OF HEARINGS, THE ORDER OF PRESENTATION OF EVIDENCE, AND ALL OTHER QUESTIONS THAT ARISE WITH RESPECT TO THE COURSE OF THE REFERENCE PROCEEDING. ALL PROCEEDINGS AND HEARINGS CONDUCTED BEFORE THE REFEREE, EXCEPT FOR TRIAL, SHALL BE CONDUCTED WITHOUT A COURT REPORTER, EXCEPT WHEN ANY PARTY SO REQUESTS A COURT REPORTER AND A TRANSCRIPT IS ORDERED, A COURT REPORTER SHALL BE USED AND THE REFEREE SHALL BE PROVIDED A COURTESY COPY OF THE TRANSCRIPT. THE PARTY MAKING SUCH REQUEST SHALL HAVE THE OBLIGATION TO ARRANGE FOR AND PAY THE COSTS OF THE COURT REPORTER, PROVIDED THAT SUCH COSTS, ALONG WITH THE REFEREE'S FEES, SHALL ULTIMATELY BE BORNE BY THE PARTY WHO DOES NOT PREVAIL, AS DETERMINED BY THE REFEREE.

(e)    THE REFEREE MAY REQUIRE ONE OR MORE PREHEARING CONFERENCES. THE PARTIES HERETO SHALL BE ENTITLED TO DISCOVERY, AND THE REFEREE SHALL OVERSEE DISCOVERY IN ACCORDANCE WITH THE RULES OF DISCOVERY, AND SHALL ENFORCE ALL DISCOVERY ORDERS IN THE SAME MANNER AS ANY TRIAL COURT JUDGE IN PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA.

(f)    THE REFEREE SHALL APPLY THE RULES OF EVIDENCE APPLICABLE TO PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA AND SHALL DETERMINE ALL ISSUES IN ACCORDANCE WITH CALIFORNIA SUBSTANTIVE AND PROCEDURAL LAW. THE REFEREE SHALL BE EMPOWERED TO ENTER EQUITABLE AS WELL AS LEGAL RELIEF AND RULE ON ANY MOTION WHICH WOULD BE AUTHORIZED IN A TRIAL, INCLUDING MOTIONS FOR DEFAULT JUDGMENT OR SUMMARY JUDGMENT. THE REFEREE SHALL REPORT HIS OR HER DECISION, WHICH REPORT SHALL ALSO INCLUDE FINDINGS OF FACT AND CONCLUSIONS OF LAW. THE REFEREE SHALL ISSUE A DECISION AND PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE, SECTION 644, THE REFEREE'S DECISION SHALL

2485269v2 / 21397.0002

16

Case 9:20-bk-11072-DS    Doc 162-1    Filed 03/15/21    Entered 03/15/21 16:51:55    Desc
                        Volume(s) two    Page 19 of 30
Case 9:20-bk-11072-DS    Claim 19 Part 2    Filed 12/17/20    Desc Exhibit Settlement and
                        Release Agreement    Page 47 of 80

BE ENTERED BY THE COURT AS A JUDGMENT IN THE SAME MANNER AS IF THE ACTION HAD BEEN TRIED BY THE COURT. THE FINAL JUDGMENT OR ORDER FROM ANY APPEALABLE DECISION OR ORDER ENTERED BY THE REFEREE SHALL BE FULLY APPEALABLE AS IF IT HAS BEEN ENTERED BY THE COURT.

(g)    THE PARTIES RECOGNIZE AND AGREE THAT ALL CLAIMS RESOLVED IN A GENERAL REFERENCE PROCEEDING PURSUANT HERETO WILL BE DECIDED BY A REFEREE AND NOT BY A JURY. AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR OWN CHOICE, EACH PARTY HERETO KNOWINGLY AND VOLUNTARILY AND FOR THEIR MUTUAL BENEFIT AGREES THAT THIS REFERENCE PROVISION SHALL APPLY TO ANY DISPUTE BETWEEN THEM THAT ARISES OUT OF OR IS RELATED TO THIS AGREEMENT.

IX.14    Requests for Notices.  Trustor requests that a copy of any notice of default and notice of sale required by law be mailed to it at the address(es) specified in Section 9.4 above.

IX.15    Attorneys' Fees.  In the event of any action at law or equity brought to enforce or interpret the terms of this agreement, including any activity in any proceeding brought under Title 11 of the United States Code, the prevailing party shall be entitled to recover its reasonable attorneys' fees, expert witness fees, and court costs.  A party asserting a proof of claim in any proceeding under Title 11 of the United States Court shall, provided that proof of claim is not successfully objected to, be deemed a "prevailing party" for purposes of this provision.

## ARTICLE X
## ADDITIONAL STATE SPECIFIC PROVISIONS

X.1    Principles Of Construction.  In the event of any inconsistencies between the terms and conditions of this Article X and the other terms and conditions of this Deed of Trust, the terms and conditions of this Article X shall control and be binding.

X.2    Environmental Provisions.

(a)    Beneficiary may waive its lien against the Mortgaged Property or any portion thereof, whether fixtures or personal property, to the extent such property is found to be "environmentally impaired" or an "affected parcel" in accordance with California Code of Civil Procedure Section 726.5 and may exercise any and all rights and remedies of an unsecured creditor against Trustor and all of Trustor's assets and property for the recovery of any deficiency and Environmental Costs (as hereafter defined), including, but not limited to, seeking an attachment order under California Code of Civil Procedure Section 483.010.    The term "Environmental Costs" shall mean any costs, damages, expenses, fees, penalties, fines, judgments, indemnification payments to third parties, and other out-of-pocket costs or expenses actually incurred or advanced by Beneficiary relating to the cleanup, remediation or other response action required under applicable law or which Beneficiary reasonably believes necessary to protect the Mortgaged Property.  As between Beneficiary and Trustor, for purposes of California Code of Civil Procedure Section 726.5, Trustor shall have the burden of proving that Trustor or any related party (or any Affiliate or agent of Trustor or any related party) was not in any way negligent in permitting the release or threatened release of the hazardous materials. Trustor acknowledges and agrees that, if this clause (a) applies, then notwithstanding any term or provision contained herein, all judgments and awards entered against Trustor shall be exceptions

Case 9:20-bk-11072-DS    Doc 162-1    Filed 03/15/21    Entered 03/15/21 16:51:55    Desc
Volume(s) two    Page 20 of 30
Case 9:20-bk-11072-DS    Claim 19 Part 2    Filed 12/17/20    Desc Exhibit Settlement and
Release Agreement    Page 48 of 80

to any nonrecourse or exculpatory provision herein or in the Guaranty, and Trustor shall be fully and personally liable for all judgments and awards entered against Trustor relating to Environmental Costs and such liability shall not be limited to the original principal amount of the obligations secured by this Deed of Trust and Trustor's obligations shall survive the foreclosure, deed in lieu of foreclosure, release, reconveyance, or any other transfer of the Mortgaged Property or this Deed of Trust. For the purposes of any action brought by or on behalf of Beneficiary under this <u>Section 10.2</u>, Trustor hereby waives the defense of laches and any applicable statute of limitations.

(b)    In the event Beneficiary elects, in accordance with California Code of Civil Procedure Section 726.5, to waive all or part of the security of this Deed of Trust and proceed against Trustor on an unsecured basis, the valuation of the Mortgaged Property, the determination of the environmentally impaired status of such security and any cause of action for a money judgment shall, at the request of Beneficiary, be referred to a referee in accordance with California Code of Civil Procedure Sections 638 et seq. Such referee shall be an impartial M.A.I. appraiser selected by Beneficiary and approved by Trustor, which approval shall not be unreasonably withheld or delayed. If the parties cannot agree on an M.A.I. appraiser approved by Trustor, either party may apply to the presiding judge of the Superior Court in which the Mortgaged Property is located to make such appointment. The decision of such referee shall be binding upon both Trustor and Beneficiary, and judgment upon the award rendered by such referee shall be entered in the court in which such proceeding was commenced in accordance with California Code of Civil Procedure Sections 644 and 645. Trustor shall pay all reasonable costs and expenses incurred by Beneficiary in connection with any proceeding under California Code of Civil Procedure 726.5, as such Section may be amended from time to time.

(c)    Beneficiary or its agents, acting by themselves or through a court appointed receiver, may upon reasonable advance notice to Trustor, enter upon the Mortgaged Property or any part thereof and may perform such acts and things as Beneficiary deems reasonably necessary or desirable to inspect, investigate, assess, and protect the security hereof, including without limitation of any of its other rights: (i) obtain a court order to enforce Beneficiary's right to enter and inspect the Real Property under California Civil Code Section 2929.5, to which the decision of Beneficiary as to whether there exists a release or threatened release of any hazardous material shall be deemed reasonable and conclusive as between the parties hereto; and (ii) have a receiver appointed under California Code of Civil Procedure Section 564 to enforce Beneficiary's right to enter and inspect the Real Property and/or the Improvements for hazardous substances. All reasonable costs and expenses incurred by Beneficiary with respect to the audits, tests, inspections, and examinations which Beneficiary or its agents or employees may reasonably conduct, including the reasonable fees of the engineers, laboratories, contractors, consultants and attorneys, shall become part of the indebtedness secured hereby and shall be paid by Trustor upon demand with interest at 7.00% per annum from the date when paid by Beneficiary.

(d)    Beneficiary may seek a judgment that Trustor has breached its covenants, representations, warranties and/or other provisions with respect to this Deed of Trust or the Guaranty by commencing and maintaining an action or actions in any court of competent jurisdiction for breach of contract pursuant to California Code of Civil Procedure Section 736, whether commenced prior to or after foreclosure of the Mortgaged Property, and may seek the

recovery of Environmental Costs (as such costs are described in Section 736), it being conclusively presumed between Beneficiary and Trustor that all such Environmental Costs incurred or advanced by Beneficiary relating to the cleanup, remediation or other response action of or to the Mortgaged Property were made by Beneficiary in good faith and are such costs as described in Section 736, Trustor acknowledges that such an action shall not constitute an action within the meaning of Section 726(a) of the California Code of Civil Procedure or constitute a money judgment for a deficiency or a deficiency judgment within the meaning of Sections 580a, 580b, 580d or 726(b) of the California Code of Civil Procedure. All Environmental Costs incurred by Beneficiary (including court costs, consultant fees and reasonable attorneys' fees and disbursements, whether incurred in litigation or not and whether before or after judgment) shall bear interest 7.00% per annum from the date of expenditure until said sums have been paid. Beneficiary shall be entitled to bid, at the sale of the Mortgaged Property held under any provision of this Deed of Trust, the amount of said costs, expenses and interest in addition to the amount of the other obligations hereby secured as a credit bid, the equivalent of cash.

(e)    Without limiting any of the remedies provided herein, Trustor acknowledges and agrees that the provisions of this Section 10.2 and any environmental indemnity executed in connection herewith are "environmental provisions" (as defined in Section 736(f)(2) of the California Code of Civil Procedure) made by Trustor relating to the Real Property (the "Environmental Provisions"). Trustor's breach of or failure to comply with the Environmental Provisions shall constitute a breach of contract entitling Beneficiary to all remedies provided under Section 736 of the California Code of Civil Procedure for the recovery of damages and for the enforcement of the Environmental Provisions. Pursuant to Section 736 of the California Code of Civil Procedure, Beneficiary's action for recovery of damages or enforcement of the Environmental Provisions shall not constitute an action within the meaning of Section 726(a) of the California Code of Civil Procedure or constitute a money judgment for a deficiency or a deficiency judgment within the meaning of Sections 580a, 580b, 580d and 726(b) of the California Code of Civil Procedure. The rights and remedies provided for herein are separate and distinct causes of action that shall not be abrogated, modified, limited or otherwise affected by the remedies provided under Section 736(a) of the California Code of Civil Procedure.

(f)    Nothing herein shall be deemed to limit the right of Beneficiary to recover, in accordance with California Code of Civil Procedure Section 736 (as such Section may be amended from time to time), any reasonable costs, expenses, liabilities or damages, including reasonable attorneys' fees and costs, incurred by Beneficiary and arising from any covenant, obligation, liability, representation or warranty given to Beneficiary, or any order, consent decree or settlement relating to the cleanup of hazardous materials or any other "environmental provision" (as defined in such Section 736 of the California Code of Civil Procedure) relating to the Mortgaged Property or any portion thereof or the right of Beneficiary to waive, in accordance with the California Code of Civil Procedure Section 726.5 (as such Section may be amended from time to time), the security of this Deed of Trust as to any parcel of the Mortgaged Property that is "environmentally impaired" or is an "affected parcel" (as such terms are defined in such Section 726.5), and as to any personal property attached to such parcel, and thereafter to exercise against Trustor, to the extent permitted by such Section 726.5, the rights and remedies of any unsecured creditor, including reduction of Beneficiary's claim against Trustor to judgment, and any other rights and remedies permitted by law.

X.3    <u>Trustee's Deed Recitals</u>. The recitals of facts in any instrument delivered upon completion of any sales, as described in <u>Section 8.2</u> above, such as the existence of a default, the giving of written notice of default and notice of sale, and other facts affecting the regularity or validity of such sale or disposition, shall be conclusive proof of the trust of such facts and any such instruments shall be conclusive against all persons as to such fact recited therein.

X.4    <u>Right Of Entry</u>. In addition to any other rights or remedies granted under this Deed of Trust but subject to the rights of lessees and any senior secured creditors, Beneficiary and its agents, acting by themselves or through a court appointed receiver, upon reasonable advance notice to Trustor and an opportunity to be present, shall have the right to enter upon the Mortgaged Property or any part thereof during regular business hours and perform such acts and things as Beneficiary deems necessary or desirable to inspect, investigate, assess, and protect the security thereof. Without limitation of any of its other rights and subject to the provisions of this Deed of Trust, Beneficiary shall have the right to:    (i) obtain a court order to enforce Beneficiary's right to enter and inspect the Mortgaged Property under California Civil Code Section 2929.5 to which the decision of Beneficiary as to whether there exists a release or threatened release of hazardous substances onto the Mortgaged Property shall be deemed reasonable and conclusive as between the parties hereto and (ii) have a receiver appointed under California Code of Civil Procedure Section 564 to enforce Beneficiary's right to enter and inspect the Mortgaged Property for hazardous substances. All costs and expenses incurred by Beneficiary with respect to the audits, tests, inspections, and examinations that Beneficiary or its agents or employees may conduct, including the fees of the engineers, laboratories, contractors, consultants, and attorneys, shall be paid by Trustor five (5) business days following demand with interest at the rate of 7.00% per annum from the date paid by Beneficiary. Such costs, if not paid for by Trustor following demand, may be added to the principal balance of the sums due under the Guaranteed Obligations and this Deed of Trust and shall bear interest thereafter until paid at the rate of 7.00% per annum.

X.5    <u>Border Zone Property</u>. To Trustor's actual knowledge, Trustor represents and warrants that no portion of the Real Property and/or the Improvements has been designated as Border Zone Property under the provisions of California Health and Safety Code, Sections 25220 et seq. or any regulation adopted in accordance therewith, and there has been no occurrence or condition on any real property adjoining the Real Property that is reasonably likely to cause the Real Property or any part thereof to be designated as Border Zone Property.

X.6    <u>Insurance Notice</u>. Beneficiary hereby notifies Trustor of the provisions of Section 2955.5(a) of the California Civil Code, which reads as follows:

"No lender shall require a borrower, as a condition of receiving or maintaining a loan secured by real property, to provide hazard insurance coverage against risks to the improvements on that real property in an amount exceeding the replacement value of the improvements on the property."

This disclosure is being made by Beneficiary to Trustor pursuant to Section 2955.5(b) of the California Civil Code. Trustor hereby acknowledges receipt of this disclosure and acknowledges

Case 9:20-bk-11072-DS    Doc 162-1    Filed 03/15/21    Entered 03/15/21 16:51:55    Desc
Case 9:20-bk-11072-DS    Claim 19 Part 2    Filed 12/17/20    Desc Exhibit Settlement and
Volume(s) two    Page 23 of 30
Release Agreement    Page 51 of 80

that this disclosure has been made by Beneficiary before execution of any note or security document evidencing or securing the Guaranteed Obligations.

    *X.7*   <u>Commercial Indebtedness</u>. Trustor represents and warrants that the Guaranteed Obligations incurred and to be incurred are for commercial purposes, and not for personal, household or consumer purposes.

*[Signature appears on the following page.]*

Case 9:20-bk-11072-DS    Doc 162-1    Filed 03/15/21    Entered 03/15/21 16:51:55    Desc
Volume(s) two    Page 24 of 30
Case 9:20-bk-11072-DS    Claim 19 Part 2    Filed 12/17/20    Desc Exhibit Settlement and
Release Agreement    Page 52 of 80

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing the day and year first hereinabove written.

**TRUSTOR:**

Peter J. Compton

By: _____

## ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA          )
                             )
COUNTY OF   Santa Barbara County   )

On __01/10/2020__, before me, __A. Noriega, Notary Public__, a Notary Public, personally appeared __PETER J. COMPTON__, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
SIGNATURE
A. Noriega, Notary Public

SEAL

A. NORIEGA
Notary Public – California
Santa Barbara County
Commission # 2224120
My Comm. Expires Dec 31, 2021

2485269v2 / 21397.0002                    22

Case 9:20-bk-11072-DS    Doc 162-1    Filed 03/15/21    Entered 03/15/21 16:51:55    Desc
Volume(s) two    Page 25 of 30
Case 9:20-bk-11072-DS    Claim 19 Part 2    Filed 12/17/20    Desc Exhibit Settlement and
Release Agreement    Page 53 of 80

Exhibit "A"

The Land situated in the County of Santa Barbara, City of Santa Maria, State of California, and is described as follows:

PARCEL ONE:

Being a portion of Lot 14 of Furukawa Industrial Park II, Tract 5268 in the City of Santa Maria, County of Santa Barbara, State of California, as per Map recorded in Book 120, Pages 27, 28 and 29 of Maps, in the Office of the County Recorder of Santa Barbara County, being more particularly described as follows:

Beginning at the Northwest corner of said Lot 14; thence along the Northerly line of said Lot 14 South 88° 54' 45" East 121.00 feet; thence leaving said line South 01° 01' 44" West 329.34 feet to a point on the Southerly line of said Lot 14; thence along the Southerly line of said Lot 14 North 88° 58' 16" West 121.00 feet to a point being the Southwest corner of said Lot 14; thence along the Westerly line of said Lot 14 North 01° 01' 44" East 329.47 feet to the point of beginning.

Said land also shown as Lot 1 of Hayes Tract No. 5792 Lot Line Adjustment recorded on June 14, 2001 as Instrument No. 01-48057 of Official Records of said County.

Excepting therefrom all oil, gas and other hydrocarbon substances in and under said land, together with the right of ingress and egress at all times for the propose of mining, drilling and exploring for said substances in and under said land.

PARCEL TWO:

An easement for drainage purposes over a portion of Lot 2 of Tract 5792 in the City of Santa Maria, County of Santa Barbara, State of California, as per Document recorded as Instrument No. 01-48057 of Official Records of Santa Barbara County being more particularly described as follows:

Being at the Northwest corner of said Lot 2; thence along the Northerly line of said Lot 2 South 88° 54' 45" East 60.00 feet; thence leaving said line South 01° 01' 44" West 50.00 feet; thence North 88° 54' 45" West 60.00 feet to a point on the West line of said Lot 2; thence along said West line of Lot 2 North 01° 04' 44" East 50.00 feet to the point of beginning.

Excepting therefrom all oil, gas and other hydrocarbon substances in and under said land, together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring for said substances in and under said land.

APN: 111-440-31

Case 9:20-bk-11072-DS    Doc 162-1    Filed 03/15/21    Entered 03/15/21 16:51:55    Desc
Volume(s) two    Page 26 of 30
Case 9:20-bk-11072-DS    Claim 16 Part 2    Filed 12/17/20    Desc Exhibit Settlement and
Release Agreement    Page 54 of 80

# EXHIBIT 4

Case 9:20-bk-11072-DS    Doc 162-1    Filed 03/15/21    Entered 03/15/21 16:51:55    Desc
Case 9:20-bk-11072-DS    Claim 1d Part 2    Filed 12/17/20    Desc Exhibit Settlement and
Volume(s) two    Page 27 of 30
Release Agreement    Page 55 of 80

# SECURITY AGREEMENT

Debtor: **Valley Farm Supply, Inc.**
      1124 Tama Lane
      Santa Maria, CA, 93455

Secured Party: **Simplot AB Retail, Inc.**
      1099 W. Front Street
      Boise, ID 83707

**THIS SECURITY AGREEMENT** dated January 3, 2020, is made and executed between Valley Farm Supply, Inc., ("Debtor") and Simplot AB Retail, Inc. ("Secured Party").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Debtor grants to Secured Party a security interest in the Collateral to secure the full, prompt and complete payment and performance of each and every debt, liability and obligation of every type and description which the Debtor or Peter J. Compton ("Peter") may now or at any time owe to the Secured Party or any predecessor-in-interest thereof, whether now existing or hereafter arising, direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, independent, joint, several or joint and several, arising under that certain Settlement and Release Agreement between the Debtor and Secured Party (the "Settlement Agreement") and all related security documents, (all such debts, liabilities and obligations being herein collectively referred to as the "Indebtedness") and agrees that Secured Party shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Secured Party may have by law.

**ASSIGNMENT OF DEBT.** The Parties acknowledge that on or about July 1, 2019, J.R. Simplot Company assigned all credit agreements and invoices associated with Debtor to Secured Party. Debtor agrees that said assignment was in all ways valid and enforceable and waives any challenge thereto.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Debtor is giving to Secured Party a security interest for the payment of the Indebtedness and performance of all other obligations under this Agreement and related loan documents:

**All Inventory, Accounts, and Equipment**

1.   The Collateral includes any and all of Debtor's present and future **inventory** (including consigned inventory), or any interest therein, related equipment, goods, merchandise and other items of personal property, no matter where located, of every type and description, including without limitation any and all of Debtor's present and future raw materials, components, work-in-process, finished items, packing and shipping materials, containers, items held for sale, Items held for which Debtor is lessor, goods to be furnished under contract for services, materials used or consumed in Debtor's business, whether held by Debtor or by others, and all documents of title, warehouse receipts, bills of lading, and other documents of every type covering all or any part of the foregoing, and any and all additions thereto and substitutions or replacements therefor, and all accessories, attachments, and accessions thereto, whether added now or later, and all products and proceeds derived or to be derived therefrom, including without limitation all insurance proceeds and refunds of insurance premiums, if any, and all sums that may be due from third parties who may cause damage to any of the foregoing, or from any insurer, whether due to judgment, settlement, or other process, and any and all present and future accounts, contract rights, chattel paper, instruments, documents, and notes that may be derived from the sale, lease or other disposition of any of the foregoing, and any rights of Debtor to collect or enforce payment thereof, as well as to enforce any guaranties of the forgoing and security therefor, and all of Debtor's present and future general intangibles in any way related or pertaining to the ownership, operation, use, or collection of any of the foregoing, including without limitation Debtor's books, records, files, computer disks and software, and all rights that Debtor may have with regard thereto. Inventory includes inventory temporarily out of Debtor's possession or custody and all returns on accounts, chattel paper and instruments.

Case 9:20-bk-11072-DS   Doc 162-1   Filed 03/15/21   Entered 03/15/21 16:51:55   Desc
Volume(s) two   Page 28 of 30
Case 9:20-bk-11072-DS   Claim 19 Part 2   Filed 12/17/20   Desc Exhibit Settlement and
Release Agreement   Page 56 of 80

2.  The Collateral includes any and all of Debtor's present and future **accounts**, or any interest thereon, accounts receivable, other receivables, contract rights, instruments, documents, notes, and all other similar obligations and indebtedness that may now and in the future be owed to or held by Debtor from whatever source arising, and all monies and proceeds payable thereunder, and all of Debtor's rights and remedies to collect and enforce payment and performance thereof, as well as to enforce any guaranties of the foregoing and security interest, and all of Debtor's present and future rights, title and interest in and with respect to the goods, services, and other property that may give rise to or that may secure any of the foregoing, including without limitation Debtor's insurance rights with regard thereto, and all present and future general intangibles of Debtor in any way related or pertaining to any of the foregoing, including without limitation Debtor's account ledgers, books, records, files, computer disks and software, and all rights that Debtor may have with regard thereto.

3.  The Collateral includes any and all of Debtor's now owned or hereafter acquired **equipment**, or any interest thereon, including but not limited to agricultural machinery, farm equipment, furnishings and fixtures of every type and description, and all accessories, attachments, accessions, substitutions, replacements and additions thereto, whether added now or later, and all proceeds derived or to be derived therefrom, including without limitation any equipment purchased with the proceeds, and all insurance proceeds and refunds of insurance premiums, if any, and any sums that may be due from third parties who may cause damage to any of the foregoing, or from any insurer, whether due to judgment, settlement or other process, and any and all present and future accounts, chattel paper, instruments, notes and monies that may be derived from the sale, lease or other disposition of any of the foregoing, any rights of Debtor to collect or enforce payment thereof as well to enforce any guaranties of the foregoing and security interest, and all present and future general intangibles of Debtor in any way related or pertaining to the ownership, operation, or use of the foregoing, and any rights of Debtor with regard thereto.

**RIGHT OF SETOFF.** Secured Party reserves a right of setoff in any and all amounts owed by Secured Party (in any capacity) to Debtor.

**DEBTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Debtor represents and promises to Secured Party that:

1.  **Perfection of Security Interest.** Debtor agrees to execute financing statements and to take whatever other actions are requested by Secured Party to perfect and continue Secured Party's security interest in the Collateral. Upon request of Secured Party, and with the permission of any senior secured lender in the Collateral, Debtor will deliver to Secured Party any and all of the documents evidencing or constituting the Collateral, and Debtor will note Secured Party's interest upon any and all chattel paper and instruments if not delivered to Secured Party for possession by Secured Party, subject to the rights of any senior secured lenders This Security Agreement will terminate upon payment of the Indebtedness in full.

2.  **Notices to Secured Party.** Debtor will promptly notify Secured Party in writing at Secured Party's address shown above (or such other addresses as Secured Party may designate from time to time) prior to any (a) change in Debtor's name; (b) change in Debtor's assumed business name(s); (c) change in the management of the Corporation Debtor; (d) change in the authorized signer(s); (e) change in Debtor's principal office address; (f) change in Debtors state of organization; (g) conversion of Debtor to a new or different type of business entity; or (h) change in any other aspect of Debtor that directly or indirectly relates to any agreements between Debtor and Secured Party. No change in Debtor's name or state of organization will take effect until after Secured Party has received notice.

3.  **Location of the Collateral.** Except in the ordinary course of Debtor's business, Debtor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Debtor's address shown above or at such other locations as are acceptable to Secured Party in writing. Upon Secured Party's request, Debtor will deliver to Secured Party in form satisfactory to Secured Party a schedule of real properties and Collateral locations relating to Debtor's operations, including without limitation the following: (a) all real property

Debtor owns or is purchasing; (b) all real property Debtor is renting or leasing; (c) all storage facilities Debtor owns, rents, leases, or uses; and (d) all other properties where Collateral is or may be located. Debtor promptly shall procure the execution, acknowledgment, and delivery of such subordination, consent, waiver, estoppel, and other agreements as Secured Party shall require by holders of any encumbrances upon or by owners of such lands where Collateral is or will be located..

4.  **Removal of the Collateral.** Except in the ordinary course of Debtor's business, including the sales of inventory, Debtor shall not remove the Collateral from its existing location without Secured Party's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Debtor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of California, without Secured Party's prior written consent. Debtor shall, whenever requested, advise Secured Party of the exact location of the Collateral.

5.  **Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Debtor's business, or as otherwise provided for in this Agreement, Debtor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Debtor is not in default under this Agreement, Debtor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Debtor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Except for liens currently existing as of the date of entry into this Agreement, and replacement liens relating to the extension or replacement of the existing lines of credit, Debtor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, and the pre-existing senior liens, without the prior written consent of Secured Party. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Secured Party, and subject to the prior rights of senior secured lenders, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Secured Party and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Secured Party to any sale or other disposition. Upon receipt, Debtor shall immediately deliver any such proceeds to Secured Party.

6.  **Authorization.** Debtor represents that the individual signing this Agreement on Debtor's behalf is duly authorized to do so both under applicable law and by Valley Farm Supply, Inc.  Debtor waives any defense to enforcement of this Agreement whose basis is that the signatory hereto was not authorized for any reason to bind the Valley Farm Supply, Inc. entity (or any successor-in-interest thereof) to this Agreement.

7.  **Title.** Debtor represents and warrants to Secured Party that Debtor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement and the senior liens described in the Settlement Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Secured Party has specifically consented, which are the liens described in the Settlement Agreement Debtor shall defend Secured Party's rights in the Collateral against the claims and demands of all other persons.

8.  **Repairs and Maintenance.** Debtor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Debtor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

9.  **Inspection of Collateral.** Secured Party and Secured Party's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

Case 9:20-bk-11072-DS   Doc 162-1   Filed 03/15/21   Entered 03/15/21 16:51:55   Desc
Volume(s) two   Page 30 of 30
Case 9:20-bk-11072-DS   Claim 19 Part 2   Filed 12/17/20   Desc Exhibit Settlement and
Release Agreement   Page 58 of 80

10. **Taxes, Assessments and Liens.** Debtor will pay when due all taxes, assessments and liens upon the Collateral.

11. **Compliance with Governmental Requirements.** Debtor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral. Debtor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Secured Party's interest in the Collateral, in Secured Party's opinion, is not jeopardized.

12. **Hazardous Substances.** Debtor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Debtor's due diligence in investigating the Collateral for Hazardous Substances. Debtor hereby (a) releases and waives any future claims against Secured Party for indemnity or contribution in the event Debtor becomes liable for cleanup or other costs under any Environmental Laws, and (b) agrees to indemnify, defend, and hold harmless Secured Party against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

13. **Maintenance of Casualty Insurance.** Debtor shall procure and maintain all risks insurance, including without limitation fire, hail, theft and liability coverage together with such other insurance as Secured Party may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Secured Party and issued by a company or companies reasonably acceptable to Secured Party. Debtor, upon request of Secured Party, will deliver to Secured Party from time to time the policies or certificates of insurance in form satisfactory to Secured Party, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Secured Party and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Secured Party will not be impaired in any way by any act, omission or default of Debtor or any other person. In connection with all policies covering assets in which Secured Party holds or is offered a security interest, Debtor will provide Secured Party with such loss payable or other endorsements as Secured Party may require. If Debtor at any time fails to obtain or maintain any insurance as required under this Agreement, Secured Party may (but shall not be obligated to) obtain such insurance as Secured Party deems appropriate, including if Secured Party so chooses "single interest insurance," which will cover only Secured Party's interest in the Collateral.

14. **Application of Insurance Proceeds.** Debtor shall promptly notify Secured Party of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Secured Party may make proof of loss if Debtor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be either applied to repair or replacement of the damaged or destroyed Collateral, or to repay senior secured debt, at the option of Debtor. Any proceeds which have not been disbursed within six (6) months after their receipt for one or both such uses, or which Debtor has not committed to the repair or restoration of the Collateral, shall be used to prepay the Indebtedness to Secured Party

15. **Insurance Reports.** Debtor, upon request of Secured Party, shall furnish to Secured Party reports on each existing policy of insurance showing such information as Secured Party may reasonably request including the following: (a) the name of the insurer; (b) the risks insured; (c) the amount of the policy; (d) the property insured; (e) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (f) the expiration date of the policy. In addition, Debtor shall upon request by Secured Party (however not more often than annually) have an independent appraiser satisfactory to Secured Party determine, as applicable, the cash value or replacement cost of the Collateral, at the cost and expense of Secured Party.